EXHIBIT 2

Thomas G. Foley, Jr., State Bar No. 65812
Kevin Gamarnik, State Bar No. 273445
**FOLEY, BEZEK, BEHLE & CURTIS, LLP**
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
Email: tfoley@foleybezek.com
        kgamarnik@foleybezek.com

Richard E. Donahoo, State Bar No. 186957
Sarah L. Kokonas, State Bar No. 262875
**DONAHOO & ASSOCIATES, PC**
440 West First Street, Suite 101
Tustin, CA 92780
Telephone: (714) 953-1010
Email: rdonahoo@donahoo.com
        skokonas@donahoo.com

Attorneys for Plaintiffs and all those similarly situated

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/17/2023 2:00 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES REED and CAROLYNN REED, on behalf of themselves and all others similarly situated, | Case No.   23STCV19709 |
| *Plaintiffs,* | **CLASS ACTION** |
| v. | **COMPLAINT FOR:** |
| RELIANT LIFE SHARES, LLC. a California limited liability company; RLS FINANCIAL SERVICES, INC., a California corporation; RELIANT LIFE SHARES SERIES TRUST, aka RLS Trust, a trust; RMS TRUST, a trust; SEAN MICHAELS, an individual; SCOTT GRADY, an individual; WILMINGTON SAVINGS FUND SOCIETY, a federal savings bank doing business as CHRISTIANA TRUST; UMB BANK, N.A., a federally chartered bank; BOU BANCORP, INC. doing business as BANK OF UTAH; FIRST WESTERN TRUST BANK, a Colorado Corporation; and DOES 1-20, | 1. **NEGLIGENCE;**<br>2. **VIOLATION OF CORPORATIONS CODE §§ 25401 & 25501;**<br>3. **VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25504.1;**<br>4. **BREACH OF FIDUCIARY DUTY;**<br>5. **FINANCIAL ELDER ABUSE (WIC § 15600 et seq.); and**<br>6. **UNFAIR BUSINESS PRACTICES (Bus. & Prof Code § 17203 et seq.)** |
| *Defendants.* | **REQUEST FOR JURY TRIAL** |

1

COME NOW Plaintiffs James Reed and Carolynn Reed (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, who complain and allege based on both personal knowledge and information and belief as follows:

### SUMMARY

1.      Plaintiffs bring this class action complaint alleging, among other things, negligence, violations of the California Corporations Code, breach of fiduciary duties, financial elder abuse and unfair competition, all occurring in or arising out of the sale of fractionalized interests in life insurance policies, or "life settlements," by Defendants Reliant Life Shares, LLC ("Reliant"), RLS Financial Services, Inc. ("RLS"), RMS Trust and Reliant Life Shares Series Trust ("RLS Trust"). (collectively "Reliant Defendants") Plaintiffs further allege that individual Defendants Sean Michaels and Scott Grady were managers, officers and directors of Reliant Defendants.

2.      Plaintiffs allege that Wilmington Savings Fund Society, a Delaware corporation doing business as Christiana Trust ("Christiana Trust"); UMB Bank, N.A., a federally chartered bank ("UMB Bank"); BOU Bancorp, Inc. doing business as Bank Of Utah ("Bank of Utah") and First Western Trust Bank, a Colorado corporation ("First Western") (collectively hereinafter "the Trustee Defendants") aided and abetted Reliant Defendants, Michaels and Grady as alleged hereinbelow, as well as breached fiduciary duties the Trustee Defendants owed to Plaintiffs and all those similary situated. The class of all those similarly situated is defined as:

> All persons, trusts, or entities who invested in a life settlement investment by or thru Reliant Defendants. Excluded are any entities or persons associated or identified with Reliant Defendants or their officers and directors or within the network of their related companies. ("the Class").

3.      As subclass of the Class is defined as all persons who were 65 years or older at the time they invested. ("the Elder Abuse Subclass")

4.      Defendant Reliant sells investments to investors structured as life settlements.

5.      Defendants Reliant, Michaels and Grady are current or former owners / members of Reliant and at the times referenced in this Complaint were managers and officers of Reliant. Plaintiffs are informed and believe that Defendants Reliant, Michaels and Grady misled investors about, *inter*

1  *alia*, their likely annual returns, the risks that investors would have to make future out-of-pocket

2  payments to keep the life insurance policies in force to protect their principal, the amount of expected

3  future premiums, and the data utilized in choosing life insurance policies purchased and sold to

4  investors.

5        6.     Plaintiffs are informed and believe that in an effort to conceal their wrongdoing from

6  investors, Defendants Reliant, Michaels and Grady used money received from investors from the sale

7  of new life settlements to pay premiums on life settlement investments sold years earlier, which had

8  not matured but had exhausted the "premium reserves" created by Reliant to keep the life insurance

9  policies it purchased and then sold fractionalized interests on those policies to investors.   Plaintiffs are

10  informed and believe that Defendants Reliant, Michaels and Grady also used investors funds to pay a

11  judgment against them as alleged hereinbelow. Plaintiffs are informed and believe that Defendants

12  Reliant, Michaels and Grady engaged in this conduct to create the false appearance that the life

13  settlements they structured and sold had minimal risk and would pay off within the expected period in

14  order to continue to solicit new investors and to prevent current investors from learning that Reliant's

15  life settlements were sold by way of the wrongdoing herein alleged and rescinding their investments.

16        7.     Plaintiffs only began to discover the basis of the claims alleged herein after the

17  California Department of Financial Protection and Innovation ("Department") issued a Desist and

18  Refrain Order December 14, 2022, which Desist and Refrain Order stated:

19          Based on the forgoing findings, the Commissioner is of the opinion that Reliant offered

20          or sold securities in California by means of oral and written communications which

21          included untrue statements of material facts or omitted to state material facts necessary in

22          order to make the statements made, in the light of the circumstances under which they

23          were made, not misleading, in violation of Corporations Code section 25401. A true and

24          correct copy of the Desist and Refrain Order is attached hereto as **Exhibit A**.

25        8.     Plaintiffs further discovered the facts alleged herein on August 15, 2023 after a court

26  appointed receiver filed an ex parte emergency application with the Los Angeles Superior Court on

27  August 14, 2023 divulging in a public record that Reliant has no funds to further operate, to pay

28  premiums and is in "dire" risk of imminent collapse and the loss of all the amounts invested by all

Class members.  A true and correct copy of the Receiver's August 14, 2023 Ex Parte Application ("the Receiver's Ex Parte") is attached hereto as **Exhibit M**.

9.     Plaintiffs and other members of the putative class were precluded from discovering the alleged claims prior to December 14, 2022 because Defendants concealed from Plaintiffs and the members of the Class the true risks and the true nature of the investments, concealing, among other things, information regarding likely annual returns, the risks that investors would have to make future, out-of-pocket payments to keep the policies in force to protect their principal, the amount of expected future premiums, the data utilized in choosing the life insurance policies to be sold to investors as investments, and the fact that Defendants Michaels and Grady were looting Reliant and using investors funds which were supposed to be deposited into an account for the Reliant Trust.

10.     As discovered August 15, 2023 in the Receiver's Ex Parte, Defendants' concealed wrongdoing has been ongoing for "several years". (**Exhibit M**, 4:9-15)  The Receiver states in his Ex Parte application: "The unfortunate reality is that Reliant did not retain sufficient funds in escrow, and in the last several years, it allowed Grady and his affiliates to withdraw and abscond with funds belonging to the company or investors that should have been used to pay policy premiums or basic business expenses. Reliant currently is unable to pay the premiums for the Portfolio. It has dozens of creditors. Additionally, the company been named in administrative cease and desist proceedings and in multiple civil lawsuits alleging fraud and misrepresentation, violations for various securities law violations, among other things. The situation is dire."

11.     As pled in this Complaint hereinbelow, because of Defendants Michaels and Grady looting the investors funds, Reliant is now insolvent, a receiver has been appointed to take over Reliant's business, and the Receiver has filed an Ex Parte Application with the Los Angeles Superior Court in litigation between the managers and officers of Reliant warning that it is likely that all the policies held in the Reliant Trust may lapse because of the lack of funds to pay premiums.

## VENUE

12.     The Purchase Agreement entered into between Plaintiffs James Reed and Carolynn Reed and the other members of the Class and Reliant states on page 8, in subsection (d):

This Agreement shall be construed and enforced in accordance with, and

governed by, without exception, the laws of California. A proceeding arising from or relating to this Agreement must be brought in the Superior Court of California, County of Los Angeles, to the exclusion of any other court of competent jurisdiction.

13.     According to the Purchase Agreement, Defendant Reliant maintains its headquarters in Los Angeles, California. According to the California Secretary of State's records, Defendant RLS Financial Services, Inc., is a California corporation which has the same office address as Reliant in Los Angeles County.

14.     Reliant was only licensed in California to sell Life Settlements, and all investors who purchased Reliant Life Shares were required to be residents of California when they first invested.

15.     Here, Plaintiffs are informed and believe that greater than two-thirds of the proposed Class members are citizens of California, and defendants Michaels and Grady from whom significant relief is sought and whose alleged conduct forms the basis for the claims brought by Plaintiffs reside in Los Angeles County, the principal injuries resulting from the alleged conduct occurred in California.

**THE PARTIES**

16.     Plaintiff Carolynn Reed resides in Redlands, California. Plaintiff James Reed was a resident of California at the time he invested in Reliant Life Shares. He now resides in Tennessee. Carolynn and James Reed entered into a Fractional Life Settlement Purchase Agreement with Reliant on July 29, 2014 and paid $50,000.00 to acquire an interest in Life Insurance Policy Number 60163540. A true and correct copy of Plaintiffs' Purchase Agreement is attached hereto as **Exhibit B.**

17.     Defendant Reliant is a California limited liability company which since 2013 has solicited investors to invest in life settlements. The headquarters on Reliant at all times referenced in this Complaint was in the City of Los Angeles, County of Los Angeles.

18.     Defendant RLS Financial Services, Inc. ("RLS") is a California corporation interrelated with Reliant and maintains its headquarters in the same office with Reliant in the City of Los Angeles, County of Los Angeles.

19.     Defendant RLS Trust is a trust operating in the state of California that was established by Defendant Reliant to hold the insurance policies which Reliant directed the trustee of the trust to

1    purchase. interrelated to Reliant and RLS.

2        20.    At all times referenced herein, Defendant SCOTT GRADY (hereinafter GRADY) was

3    an officer and manager of Defendant Reliant, who resides in the County of Los Angeles.

4        21.    At relevant times referenced herein, Defendant Sean Michaels ("Michaels") was an

5    officer and manager of Defendant Reliant.

6        22.    During relevant times herein alleged Wilmington Savings Fund Society, FSB dba

7    Christiana Trust ("Christiana Trust") is and was a federal savings bank that acted as the escrow agent

8    and trustee for the transactions between Reliant and investors and accepted investors funds to be used

9    to purchase a fractionalized interest in life insurance policies identified by Reliant. Defendant

10   Christiana Trust also served as the trustee of one or more trusts established by Defendant Reliant to

11   hold as asset the life insurance policies the trust purchased at the direction of Reliant.  Reliant

12   Defendants held Christiana Trust out as an institutional independent bank trustee whose duties

13   included, but were not limited to, accepting investment funds, manage premium reserve accounts,

14   make payments to carriers, and to distribute policy benefits to each of the investors upon policy

15   maturity.

16       23.    During relevant times herein alleged Defendant UMB Bank n.a., a division of UMB

17   Financial Corporation ("UMB Bank"), is and was national bank that served as the escrow agent and

18   trustee of the trust designated by Reliant to purchase life settlement insurance policies to be held in the

19   trust. On its website, Reliant referred to UMB Bank as "an institution founded in 1913 and for the fifth

20   straight year was ranked as one of America's Best Banks based on eight financial measures of asset

21   quality, capital adequacy, and profitability, according to studies by Forbes and SNL Financial. Since

22   2007, UMB has consistently been ranked as the fourth-largest municipal trustee and has $41.4 billion

23   in assets under management." Like Christiana Trust, Reliant Defendants held UMB Bank out as an

24   institutional independent bank trustee whose duties included, but were not limited to, accepting

25   investment funds, manage premium reserve accounts, make payments to carriers, and to distribute

26   policy benefits to each of the investors upon policy maturity.

27       24.    During relevant times herein alleged Defendant BOU Bancorp, Inc. is and was a Utah

28   corporation doing business as Bank of Utah, ("Bank of Utah").  Reliant used Bank of Utah as the

6

escrow agent to accept investors funds, and as the trustee of the trust used to purchase life settlement insurance policies identified by Reliant. Like prior trustees, Reliant Defendants held Bank of Utah out as an institutional independent bank trustee whose duties included, but were not limited to, accepting investment funds, manage premium reserve accounts, make payments to carriers, and to distribute policy benefits to each of the investors upon policy maturity.

25.     During relevant times herein alleged Defendant First Western Trust Bank was a Colorado corporation that acted as the escrow agent and trustee for Reliant Life Settlements and permitted its name to be used on Reliant's website and in its marketing brochures. Like prior trustees, Reliant Defendants held First Western Trust Bank out as an institutional independent bank trustee whose duties included, but were not limited to, accepting investment funds, manage premium reserve accounts, make payments to carriers, and to distribute policy benefits to each of the investors upon policy maturity

26.     Defendants Christiana Trust, UMB, Bank of Utah, and First Western Trust Bank are collectively hereinafter referred to as the "Trustee Defendants". The investors in Reliant Life Settlements were the beneficiaries of the Reliant Trust. As trustees of the Reliant Trust, each of the Trustee Defendants owed fiduciary duties to the investor beneficiaries of the Reliant Trust.

27.     Plaintiffs are unaware of the true names and capacities of DOE Defendants sued herein as DOES 1-20, and therefore sue those Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege their true and accurate names and capacities when ascertained.

28.     Plaintiffs are informed and believe and upon such information and belief allege that each of the fictitiously named Defendants are responsible for the acts and/or omissions herein alleged, and that Plaintiffs' injuries and damages as herein alleged were proximately caused by the acts and/or omissions of such fictitiously named Defendants.

## FACTUAL BACKGROUND

29.     Defendant Reliant used improper general solicitation and marketing and misleading advertising to sell investments in "life shares" to investors.  Attached as **Exhibit C** hereto is a copy of Defendant Reliant's internet website from February 2015. In that version of Reliant's website it identifies Christina Trust as the "third party escrow agent and trustee of the Reliant Life Shares Series

7

Trust ("Reliant Trust"). Reliant is responsible for providing direction to Christiana Trust in the management and administration of investor accounts invested in the Reliant Trust." It also states: "Reliant Life Shares chose Christiana Trust because of their thirty years of combined experience in life settlement transaction." Reliant had a Link on its website to Defendant Christiana's Life Settlement Brochure. It also stated on Reliant's website that: "In order to ensure safekeeping of the assets placed in trust, Reliant has authorized Christiana Trust to act as custodian and trustee, with sole signatory authority on this account." Subsequent Reliant websites featured Defendant MUB, and Defendant Bank of Utah as the escrow officer and trustee of the Reliant Trust.

30.     Attached hereto as **Exhibit D** is a copy of a marketing brochure ("Brochure") which Defendant Reliant utilized to sell fractionalized interests in life insurance policies to Plaintiffs and class members. Plaintiffs are informed and believe that Defendant Reliant utilized the same basic Brochure to market Reliant Life Shares between 2013 and 2022, but changed the name of the institution that was to act as the "escrow agent" and "trustee" of the trusts established by Reliant to hold the insurance policies.

31.     Plaintiffs are informed and believe that each of the Trustee Defendants knowingly authorized Reliant to use each Trustee Defendant's name and reputation in the Life Settlement Industry to be used by Defendant Reliant's written marketing brochures ("Brochure") which informed potential investors that each Trustee Defendant would serve as an "independent escrow agent and trustee". Plaintiffs are informed and believe that in each version of the Brochure the descriptions of the escrow agent and trustees duties in each version included the following: "Life Shares are structured to protect the client's holdings from any external threat through a trust structure . . ." "Holds all client monies in a separate escrow." "The Trustee receives all investor funds into a subscription escrow account and upon direction from the investor places funds into each trust which holds the specific policy that the investor chooses to invest into." "By using an independent and professional Trustee/Escrow Agent, client monies are only disbursed as directed in the purchase agreements.

32.     In the Brochure, Reliant touted the reputation of the trustee that it was utilizing at the time each of the Trustee Defendants was acting as the trustee of the trusts established by Reliant.

33.     On page 9 of the attached Brochure, and in each version of the Brochure used between

2013 and 2023 it states:

> "The history of all maturities for life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and half after. This outcome is an indication of the quality of estimates used. It also further supports the investment strategy of a diversified portfolio of fractional interests in life settlements."

34. In the Desist and Refrain Order from the State of California Department of Financial Protection and Innovation, **Exhibit A** attached hereto, it states on page one in paragraph 5:

> "In connection with the offer and sale of these securities, Reliant and its agents made untrue statements of material fact and material omissions to potential investors, including but not limited to the following:
>
> . . .
>
> b. Stating in Reliant's sales materials that: 'The history of actual maturities for life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and half after.' This statement implied to investors that Reliant had the same performance when it did not.
>
> Based on the forgoing findings, the Commissioner is of the opinion that Reliant offered or sold securities in California by means of oral and written communications which included untrue statements of facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Corporations Code section 25401."

35. This violation of Corporations Code section 25401 was made in Defendant Reliant's marketing materials which Plaintiffs are informed and believe were utilized in Reliant's marketing materials for more than ten (10) years and is a class wide omission of fact which supports certification of the proposed Class in this case.

36. In 2014, Reliant provided Plaintiffs a projection ("Projection") for Policy Number

9

60163540 ("Subject Policy") which set forth the projected premiums on the Subject Policy to be paid for twenty years, commencing in 2014. A true and correct copy of that Projection is attached hereto as **Exhibit E**. The Projection assumed that Plaintiffs invested $100,000 in the Subject Policy which would have been a 3.68% interest in the Subject Policy. Plaintiffs invested $50,000.00 in the Subject Policy, which meant that Plaintiffs had a 1.84% investment in the Subject Policy.

37. It states in the Projection that the insured's expected life expectancy as of 2014 was 6.42 years. In the Projection it states that Plaintiff's percentage share of the premiums on the Subject Policy for the first seven (7) years would be paid from the Premium Reserve funded by Plaintiffs initial investment, and it provided a projection for what subsequent premium would be after the initial seven years in the event that the insured lived past her expected life expectancy.

38. In section 2(b) of the Purchase Agreement, **Exhibit A** attached hereto, it states that in the event all of the premium escrow accounts are depleted, the trustee of the trust shall notify the purchaser not less than 90 days before any premium payment becomes due.

39. According to the Projection the total premium due on the Subject Policy in the eighth year, 2021, would be $78,985, and Plaintiffs  projected percentage share of the premium in the eighth year would be $2,913 for a 3.6% interest, which would be $1,456.60 for a 1.8% interest. On June 2, 2021, Reliant, not the trustee, sent a capital-call letter to Plaintiffs stating that the total annual premium for the Subject Policy for the 8th year was $151,669.00, and demanded a payment of $2,946.39 for "policy premiums, maintenance and trustees fees necessary to keep this policy in force" to be paid by Plaintiffs no later than July 27, 2021 in order to prevent Plaintiffs' 1.84% interest in the Subject Policy from lapsing, and stating that the funds should be payable to Reliant Life Shares Series Subscriber Escrow Account at Defendant First Western Trust Bank. A copy of that June 2, 2021 letter is attached hereto as **Exhibit F**. Plaintiffs complied and mailed a check for $2,946.39.

40. According to the Projection, **Exhibit E** attached hereto, the annual premium in the 9th year for the Subject Policy would be $79,387. On January 23, 2022, Defendant Reliant sent a capital call letter to Plaintiffs stating that the annual premium for the 9th year would be $116,495.20, making demand that Plaintiffs pay $2,297.88 no later than February 23, 2022 for policy premiums, maintenance and trustees fees. A true and correct copy of that January 23, 2022 letter is attached

1    hereto as **Exhibit G**. Plaintiffs complied with that demand.

2           41.    According to the Projection, **Exhibit E** attached hereto, the annual premium in the 10th

3    year, 2023, would be $50,335. On February 21, 2023, Reliant sent a letter to Plaintiffs stating that the

4    annual premium for the Subject Policy would be $123,434.52, and their percentage share of that

5    annual premium would be $2,325.82; a true and correct copy of that letter is attached hereto as

6    **Exhibit H**. Plaintiffs complied with that demand.

7           42.    The trial court in the Cooper Litigation on September 6, 2019 made Findings of Fact and

8    Conclusions of Law in support of its Judgment, a true and correct copy of which is attached hereto as

9    **Exhibit I**:

10          In Finding of Fact No. 59 the court found:

11                 "Michaels and Grady, and their respective entities, have received at least

12                 $11,724,675.94 in payments and distributions based on their positions as

13                 owners of Reliant as of December 31, 2018.

14          In Finding No. 53 the Court found that:

15                 "On occasion Reliant was required to access its savings account to pay

16                 monthly expenses; and, in late 2018, there were occasions when Reliant

17                 did not maintain enough funds in its bank accounts to pay its monthly

18                 expenses."

19          43.    The court in the Cooper Litigation made, *inter alia*, the following Conclusions of Law in

20    support of its Judgment:

21                 In Conclusion of Law No. 12 the Court found:

22                 Here the evidence established that Michaels utilized Reliant and his

23                 entities . . . as an extension of himself by disregarding corporate

24                 formalities, comingling money, and transferring assets without

25                 consideration; so much so that Reliant and the Michaels entities are alter

26                 egos of Michaels. . . . Additionally, Michaels authorized transfers himself

27                 and to some of the Michaels Entities without regard for whether Reliant

28                 was properly capitalized to conduct business on an ongoing basis.

In Conclusion of Law No. 13 the Court found:

"Likewise, Grady utilized Reliant and his entities . . . as an extension of himself by disregarding corporate formalities, comingling money, and transferring assets without consideration; so much so that Reliant and the Grady Entities are alter egos of Grady. . . . Additionally, Grady authorized transfers from Reliant to himself and to some of the Grady Entities without regard for whether Reliant was properly capitalized to conduct business on an ongoing basis."

44.    On October 6, 2020, Daniel B. Cooper and Richard Cooper obtained a Second Amended Judgment in Case No. BC604858 in the Los Angeles County Superior Court (the "Cooper Litigation") jointly and severally against Defendants Sean Michaels, Scott Grady and Reliant for over $10 million; a true and correct copy of that Second Amended Judgment is attached hereto as **Exhibit J**.

45.    Reliant, Michaels and Grady appealed the judgment in the Cooper Litigation. On April 4, 2023 the California Court of Appeal, Second District, issued its opinion. Which affirmed the judgment in full. "We find no merit in any of the claims [on appeal] and affirm the judgment in full." A true and correct copy of the Court of Appeals opinion is attached hereto as **Exhibit N**.

46.    Reliant filed a Further Status Report in the Cooper Litigation on May 3, 2023, a true and correct of which is attached hereto as **Exhibit K**. In that Status Report, Reliant stated at pages 2-3:

"On March 6, 2020, judgment was entered against Reliant and its sole owner Scott L. Grady . . . along with other former owners and associated entities of Reliant. On May 21, 2021, the Court entered a Third Amended Judgment ("Judgment") that includes declaratory judgment valuing Cooper's one-third interest in Reliant at $4,200,000. In addition, Cooper was awarded $6,028,786 in back distributions. As part of that judgment drafted by Cooer's counsel and the Cour, Reliant took the responsibility of paying the one-third interest, and Cooper agree to that."

1

2          . . .

           Judgment Debtors promptly paid $5,400,000 in cash to Cooper after entry

3          of the Judgment.

4          . . .

5          In total, Judgment Debtors have transferred assets and cash in the amount

6          of $7,224,730.16 in partial satisfaction of a Judgment of $10,228786.16,

7          yielding a balance of $3,004,056. This excludes interest, but as to the

8          actual judgment entered, constitutes payment of 71% of the judgment in

9          this case. Such performance argues against a receivership and argues for

10         adoption of the plan herein. ***The proposed plan would put an end to this***

11         ***case without irreparably harming 2,000 investors that have no part in***

12         ***any disputes between Reliant and Cooper.***"

13         (Emphasis added.)

14         47.    Because Reliant and the other defendants in the Cooper Litigation failed to pay the

15  balance of the Judgment to Cooper, on June 23, 2023 at the request of Cooper, the Court in the Cooper

16  Litigation entered an Order appointing a "Limited Temporary Receiver" over Reliant to further

17  Cooper's efforts to collect the remaining unpaid balance owed by Defendants Grady and Reliant.

18         48.    On August 2, 2023 in the Cooper Litigation at the request of Cooper, for the purposes

19  of requiring Reliant to pay the remaining unpaid portion of the Judgment to Cooper, the Court entered

20  an Order Modifying and Expanding Receivership and Granting Additional Powers to Receiver, and

21  placing Reliant in a full receivership.  A true and correct copy of the Order is attached hereto as

22  **Exhibit L**. The court appointed receiver is Christopher Conway.

23         49.    On page 14 of that Order the Court put a freeze order in effect which granted the

24  Receiver total control of all Reliant's assets including any funds provided to Reliant by investors:

25         "Until further order of this Court, all assets under the control of Reliant

26         Life Shares, LLC, or that are attributable to funds provided to Reliant Life

27         Shares, LLC by an investor or client of Reliant Life Shares, LLC, are

28         frozen until possessed by the Receiver. Reliant Life Shares, LLC, Grady,

Stevens, and any other officers, directors, managers, **trustees**, members,

**escrow agents**, employees, accountants, representatives, facilitators,

agents, servants, employees, attorneys, **and all other persons and entities**

**in active concert or participation with them**, are hereby restrained and

enjoined from directly or indirectly, conveying, disbursing, divesting,

distributing, using, withdrawing, transferring, setting off, receiving,

changing, selling, pledging, assigning, liquidating, or otherwise disposing

of, or withdrawing any assets and property owned by, controlled by, on in

the possession of Reliant, Old Ranch Road Business Services, LLC, or,

the **Reliant Life Shares Trust (or its subtrusts),** without first obtaining

advance written permission from the Receiver or this Court. This freeze

shall include, but is not limited to, those funds located in any bank

accounts, brokerage accounts, or any other accounts or property of Reliant

Grady and the foregoing entities). (Emphasis added.)

50.     Based on information and belief, Plaintiffs allege that since entry of the Judgment Reliant has paid Cooper millions of dollars but has not satisfied the Judgment.

51.     Reliant's website at www.reliantliefeshares.com has been taken off the internet.

52.     In the Cooper Litigation, on August 14, 2023 the Receiver filed an emergency ex parte application entitled Receiver Christopher Conway's Ex Parte Application For Authority To Sell Certain Policies And For Miscellaneous Relief. ("Receiver's Ex Parte").   A copy of the Receiver's Ex Parte is attached hereto as **Exhibit M**.  The Receiver's Ex Parte reveals significant findings based on the Receiver's recent examination of Reliant's business and financial records. The following are excerpts from the Receiver's Ex Parte Application:

**INTRODUCTION & EMERGENCY NATURE OF MOTION**

At present, Reliant Life Services, LLC ("Reliant") is in Receivership. The

current focus of this case revolves around 38 life insurance policies with

an aggregate face value of death benefits in excess of $177,000,000.

While these policies represent valuable assets of the receivership, the

14

1      Receiver states he currently has insufficient funds to pay any necessary

2      business operating expenses or to continue paying the premiums that are

3      due on these policies for longer than 3-4 weeks. Without the ability to pay

4      the premiums, the Receiver informs the Court in the Cooper Litigation

5      that these policies will lapse, and the Receivership Assets will be lost. The

6      Receiver states this outcome will be catastrophic—not only to the

7      Defendant/Judgment-Creditor Cooper, but also to thousands of innocent

8      investors, many of whom have invested a significant amount of their

9      savings in life settlement contracts in which Reliant was involved.

10 Receiver's Ex Parte, 2:4-14

11      Reliant has insufficient reserves available to pay these premiums, and

12      almost all of the policies in the Portfolio are currently in grace. Reliant

13      does not have any current income stream or available funds from its

14      business operations that can be used to pay the premiums. But if these

15      premiums are not paid, then it is almost certain that all of the policies in

16      the Portfolio will lapse, and the entire value of the Portfolio will be lost.

17 Receiver's Ex Parte, 3:1-5

18      Since his initial appointment, the Receiver has been acting to fulfill

19      his duties pursuant to the Order in the Cooper Litigation appointing him as

20      a Receiver. The Receiver recognized at the outset of his appointment that

21      there was an immediate problem of insufficient reserves held by the Bank

22      of Utah, as Trustee of the Reliant Life Shares Series Statutory Trust

23      Second Amended and Restated Agreement and Declaration of Trust dated

24      March 16, 2023 ("Trust") to cover the premium payments due on the

25      policies in the Portfolio. At the time the Receiver took over management,

26      policies with death benefits exceeding $8 Million had lapsed without

27      possibility of reinstatement, and the remainder of the $169 million were in

28      grace with exhausted reserves. Additionally, policies with death benefits

15

exceeding $ 25 Million were going to lapse without immediate action by Receiver. The Receiver alleges that he has done his best to address this problem by seeking and obtaining authority from the Court in the Cooper Litigation since his initial appointment in order to borrow from existing reserve accounts within the Portfolio (even if allocated to other policies) to be able to make premium payments for which there are no reserves or insufficient reserves. However, the Receiver states that even those efforts are now exhausted, and there simply are not enough funds to keep the Portfolio from collapsing.

Reliant appears to have conducted its operations through numerous limited liability companies, trusts, individuals, and relationships with third parties operating within the life settlement industry. Its operating structure was convoluted at best. Despite the Receiver's efforts to get a handle on Reliant's business operations (and that of the Trust and all related entities), to obtain a complete and accurate accounting of the policies in the Portfolio, and to take control of and marshal the Receivership Assets for the benefit of Defendant Cooper, as well as Reliant's other creditors and investors, the only thing clear is that Reliant did not keep accurate or detailed records for each respective investor, and there are vast discrepancies between the information the Receiver has obtained from Reliant, its servicer, and the Trustee. It also appears Reliant routinely co-mingled funds between and among investor accounts, as well as between Grady's own personal account, and various affiliated accounts he controls (e.g., Laforce Holdings and Old Ranch Road Business Services). All of these issues— which standing alone are significant, have only been exacerbated by Reliant's failure to establish and/or implement the high level of management required to maintain this Portfolio in good standing.

The unfortunate reality is that Reliant did not retain sufficient

1       funds in escrow, and in the last several years, it allowed Grady and his

2       affiliates to withdraw and abscond with funds belonging to the company

3       or investors that should have been used to pay policy premiums or basic

4       business expenses. Reliant currently is unable to pay the premiums for the

5       Portfolio. It has dozens of creditors. Additionally, the company has been

6       named in administrative cease and desist proceedings and in multiple civil

7       lawsuits alleging fraud and misrepresentation, violations for various

8       securities law violations, among other things. The situation is dire.

9   Receiver's Ex Parte 3:6-4:15

10      The bottom line is this: **There is no money available to pay**

11      **premiums as Reliant has all but ceased business operations, and no**

12      **other funding sources are currently available to Receiver that will**

13      **provide the necessary funds in time to prevent irreparable harm from**

14      **failure to pay premiums other than to sell some of the policies**.1 The

15      only viable solution is for the Receiver to sell 2 or 3 of the most

16      marketable policies from the Portfolio free and clear of any investor

17      claims in order to obtain funds to move forward. The Receiver has

18      substantial experience with trying to obtain financing as it relates to

19      managing the Portfolio. If the Receiver believed that there was another

20      readily available source of funds, he certainly would have pursued it. But

21      there are no other options available, and the Receiver is out of time.

22      Simply stated, if the policy premiums are not paid and the Receiver cannot

23      sell the policies identified below, then the entire Portfolio will be lost.

24      This means Cooper will receive nothing, there will be no funds to pay any

25      other creditors or the Receiver, and all of the remaining investors will lose

26      the entire value of their investments, and the Portfolio will collapse.

27  Receiver's Ex Parte 6:4-16 (emphasis in original)

28

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs brings this action as a class action on behalf of all persons, trusts, or entities who invested in a life settlement investment by or thru Reliant Defendants. Excluded are any entities or persons associated or identified with Reliant Defendants or their officers and directors or within the network of related companies. ("the Class").

54.     Plaintiffs are informed and believe based on Defendant Reliant's statement in **Exhibit K**, the Further Status Report that there are approximately 2,000 members of the Class. The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiffs at this time. They can be ascertained through appropriate discovery. Plaintiffs believe that there are hundreds or potentially thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Reliant or by the records of the defendants who served as escrow agents and trustees of the trusts which held the purchased life insurance policies, such that members of the Class may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of laws and causes of action set forth herein.

56.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation, including a class action involving the sale of Life Settlements which was litigated in the Complex Litigation Department of the Los Angeles Superior Court. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      (i)     Whether written statements in Defendant Reliant's marketing materials,

including the written statement regarding the "Bell Curve", which statement was found by the Commissioner of the Department of Financial Protection and Innovation to be an untrue statement of material fact or a material omission to potential investors, was a misrepresentation of fact or the omission of a material fact.

(ii)   Whether Reliant Defendants, Michaels, Grady and/or the Trustee Defendants were negligent in not disclosing to class members that premiums on the policies would significantly increase if the insured lived longer than the estimated life expectancy, causing the pro-rate share of premium cash calls to be higher than stated in the Life Settlement Disclosure Form.

(iii)   Whether Defendants Reliant, Michaels and Grady improperly utilized class members deposits to make distributions to Defendants Michaels and Grady, which made Reliant insolvent.

(iv)   Whether Defendant Reliant utilized Life Expectancy Reports from accredited individuals or companies in determining life expectancies of the insureds from whom it purchased life insurance policies.

(v)   Whether the Trustee Defendants aided and abetted Reliant by knowingly permitting Reliant to tout their reputations in Reliant's marketing materials and on its website to induce investors to invest in Reliant's Life Shares.

(vi)   Whether the Trustee Defendants were negligent in knowingly permitting Reliant to use their names in promoting the sale of Life Settlements on its website and in its marketing Brochures which contained misrepresentations of fact, and failures to disclose facts which necessary to make statements made on the Website and in the Brochures accurate.

(vii)   Whether the Trustee Defendants owed each member of the Class who was a beneficiary of the Reliant Trust a fiduciary duty.

(viii)   Whether the Trustee Defendants breached their fiduciary duties to members of the Class.

19

CLASS ACTION COMPLAINT

      (ix)    Whether Reliant was negligent in not disclosing to class members that premiums on the policies would likely be significantly higher when the reserves were exhausted, causing the prorata share of premiums for capital calls would be higher than stated in Reliant's Life Settlement Disclosure Form.

      (x)    Whether Reliant, Michaels, Grady or Trustee Defendants engage business practices the violate California's unfair competition law. (Bus. & Prof. Code §17203 et seq.)

58.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be little difficulty in the management of this action as a class action.

59.    Plaintiff James Reed was a resident of the State of California and over the age of 65 at the date he invested in Reliant Life Shares. Plaintiff James Reed will serve as the Class Representative for an Elder Abuse Subclass comprised on Class members who were residents of the State of California and age 65 or older at the date they invested in an insurance policy thru Reliant.

## CIVIL CONSPIRACY / ALTER EGO ALLEGATIONS

60.    Plaintiffs are informed and believe and based thereon allege that Defendants, and each of them, engaged in a civil conspiracy to commit the wrongdoing alleged in this Complaint, including but not limited to engage in the misrepresentations, omissions and breach of fiduciary duties alleged herein. Plaintiffs and all those similarly situated were harmed by the acts of Defendants, and each of them, resulting in damages. Based on the existence of the conspiracy to commit the wrongdoing alleged herein, each defendant is vicariously liable for the wrongful acts of the other defendants.

61.    Plaintiffs are informed and believe and based thereon allege that Defendant Sean Michaels utilized Reliant and his personal entities PB Consulting, LLC, PB Consulting 2, LLC, the 2007 Irrevocable Octopus Trust, the 2007 MMA Trust, the RLM Trust, and 18LS, LLC (the "Michaels Entities") as an extension of himself by disregarding corporate formalities, comingling money, and

1  transferring assets without consideration; so much so that Reliant and the Michaels Entities are alter

2  egos of Michaels. Similarly, Michaels is deemed to be the alter ego of Reliant.

3      62.     Plaintiffs are informed and believe and based thereon allege Defendant Grady utilized

4  Reliant and his personal entities LaForce Holdings, LLC, Tristan Capital, Inc., the RLS Trust, and the

5  SLG Trust (the "Grady Entities") as an extension of himself by disregarding corporate formalities,

6  comingling money, and transferring assets without consideration; so much so that Reliant and the

7  Grady Entities are alter egos of Grady. Similarly, Grady is deemed to be the alter ego of Reliant.

8      63.     In the Cooper Litigation the trial court engaged in a 12-day bench trial (phase one) and

9  then a 9-day jury trial (phase two). The trial court then entered judgment against Reliant, Michaels and

10  Grady, and their related entities, finding that Michaels and Grady used Reliant and their other entities

11  as alter egos and extensions of themselves.   As the Court of Appeal observed:

12          The court found Cooper remained a current one-third owner of the LLC and was entitled to

13          receive one-third of all monies paid to the other two members since November 2013. . . . . The

14          court also ordered an accounting, and ultimately imposed a constructive trust over certain assets

15          to compensate Cooper for millions of dollars wrongfully transferred from the LLC to Michaels

16          and Grady. The court further found Michaels and Grady used the LLC and certain trusts and

17          other entities they controlled as extensions of themselves, and concluded the LLC and the other

18          entities and trusts were alter egos of Michaels and Grady. (The court later observed Michaels

19          and Grady" used the corporate coffers of Reliant as their own personal piggy banks.")

20  **Exhibit N** p. 3.

21          [T]he court acted well within its discretion when it decided alter ego claims in phase one.

22          Cooper's cross-complaint alleged Reliant paid monies to shell business entities associated with

23          Michaels and Grady, and that Michaels and Grady funneled unauthorized payments and

24          withdrawals into shell business

25          entities.

26  **Exhibit N** p. 16.

27          We note, and agree with, the trial court's denial of Michaels's JNOV motion on this issue:

28          "There was also substantial evidence, indeed admissions, that Michaels and Grady created shell

21

companies such as PB Consulting LLC (for Michaels) and LaForce Holdings LLC (for Grady) as conduits through which they could funnel money from Reliant to other entities, such as the Friwat policy, for their own benefit. These shell companies were part of the fraud determined by the jury that prevented Cooper from discovering all sums paid to Michaels and Grady." The trial court also stated in its JNOV ruling, that "there was ample evidence that an injustice would result, given that Cooper demonstrated that Michaels and Grady had used the corporate coffers of Reliant as their own personal piggy banks." . . . . As we have already observed, the trial court expressly found that PB Consulting #2 "was established for the purpose of investing in the Friwat Policy," and "[m]oney from Reliant was used to invest in and pay the premiums on the Friwat Policy." The court further found that 18LS Holdings, "an entity owned by Michaels, Grady, and Luke Walker, own[ed] forfeited and unsold portions (the

'Tails') of life insurance policies sold by Reliant"; and 18LS "paid $1,000 for the entirety of Tails it received." **The trial court's alter ego findings are supported by the evidence**. **Exhibit N**. pp. 33-34 (emphasis added)

## FIRST CAUSE OF ACTION

## NEGLIGENCE

**By Plaintiffs for Themselves and the Class Against All Defendants and Does 1-20**

64.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, save and except any allegations that could be interpreted and/or construed to mean intentional or willful conduct. This cause of action is intended to only include negligent acts. Moreover, this cause of action is pleaded in the alternative to the intentional torts alleged in this Complaint.

65.     Defendant Reliant held itself out in Offering Circulars, on its website and in its marketing Brochures provided to potential investors as having special expertise in the Life Settlements industry to provide investors in evaluating and structuring life settlement transactions ("Life Settlements") for potential investment, and therefore was required to exercise the skill and knowledge normally possessed by individuals and companies offering investments in Life Settlements. Additionally, because Life Settlements are securities regulated by the California Department of Corporations pursuant to Corporations Code section 25401, Defendant Reliant had a statutory duty to

22

1  provide truthful, accurate, and complete disclosures in the sale of Life Settlement investments.

2  However, Defendant Reliant in performing their services for Plaintiffs and other investors failed to use

3  reasonable care, and their conduct fell below the reasonable standard of care in choosing appropriate

4  Life Settlement investments for its investors including utilizing Life Expectancy Evaluations from

5  knowledgeable independent third parties with a background, education, training and experience in

6  actuarial evaluations. Instead, Reliant relied upon life expectancy evaluations prepared by brokers who

7  offered to sell life insurance policies to Reliant.

8      66.    The Trustee Defendants, as trustees of the Trust, permitted and authorized  Defendant

9  Reliant to make representations in Offering Circulars, on Reliant's website, and in Reliant's marketing

10  Brochures that held the Trustee Defendants out as providing services to investors in a profession, as a

11  professional trustee of Life Settlement trusts, and, therefore, the Trustee Defendants were required in

12  acting as trustees of the Reliant Trust to exercise the skill and knowledge normally possessed by

13  members of that profession. (Restatement 2nd of Torts, §299a.)

14      67.    As professional trustees with experience in administering life settlement trusts, the

15  Trustee Defendants had a duty to Plaintiffs and members of the Class, who were beneficiaries of the

16  Trust, to confirm that Reliant was using actuarially based life expectancy estimates to establish the

17  Reserves for the policies that the trustees purchased on behalf of the Reliant Trust, which policies were

18  for the beneficiaries of the Trust. Plaintiffs are informed and believe that the Trustee Defendants were

19  negligent in failing to confirm that Reliant was utilizing actuarially based life expectancy estimates in

20  establishing the reserves on the policies that the Trustee Defendants as trustees of the Trust were

21  purchasing, monitoring and administrating on behalf of Plaintiffs and members of the Class as

22  beneficiaries of the Reliant Trust.

23      68.    The Trustee Defendants knew that Defendant Reliant was making specific affirmative

24  representations in its Offering Circulars, on its website, and in its marketing Brochures to potential

25  investors about the Trustee Defendants to induce investors to invest in Reliant Life Shares. Those

26  affirmative representations were that: (1) Trustee Defendants would serve as an "independent escrow

27  agent and trustee." (2) That "Life Shares are structured to protect the client's holdings from any

28  external threat through a trust structure . . ." (3) that the Trustee Defendants would "Hold all client

monies in a separate escrow." (4) That "The Trustee receives all investor funds into a subscription escrow account and upon direction from the investor places funds into each trust which holds the specific policy that the investor chooses to invest into." (5) That "By using an independent and professional Trustee/Escrow Agent, client monies are only disbursed as directed in the purchase agreements."

69.     The Trustee Defendants were negligent in not safeguarding investors' funds as represented in the Offering Circulars, Reliant's website and Brochures by following instructions from Defendants Grady and Michaels to transfer investor funds from Reliant to themselves in excess of what had been disclosed to investors, which allowed Grady and Michaels to make unauthorized distributions to themselves which depleted investors' funds should have been held in the Reliant Trust to make premium payments on insurance policies held by the Reliant Trust.

## SECOND CAUSE OF ACTION

## VIOLATION OF CORPORATE CODE §§ 25401 & 25501

### By Plaintiffs for Themselves and the Class Against

### Reliant Defendants, Scott Grady, Sean Michaels and Does 1-20

70.     Plaintiffs incorporate by reference all the above paragraphs including each wrongdoing, and lack of disclosure already alleged in the general allegations section of this Complaint.

71.     Defendant Reliant by reason of the of above mentioned facts as set forth in the General Allegations and contained in allegations subsequently pled in this Second Cause of Action sold Plaintiffs and all members of the Class securities in violation of Corp. Code § 25401, which prohibits offers or sales of securities including investment opportunities by means of a written or oral communication that contain: "Untrue statement[s] of a material fact or omits to state a material fact necessary in order to make the statement[s] made, in light of the circumstances under which they were made, not misleading."

72.     The areas of untrue statements, concealment and or violations that also go to the elements of breach of fiduciary duty and wrongdoing, include inter alia:

a.     Defendant Reliant did not properly portray the statistics associated with prior Reliant's investments concerning its ability to meet its life expectancy estimates after a decade of

24

being in business and not portraying truthfully the consequences of what happens when the life expectancy premium reserves are exhausted leaving no funds to pay premiums.

b. Defendants Reliant, Michaels and Grady failed to provide the information to investors required by Cal Corporate Code §25102(q) about the issuer and or information about the issuer important to know including but not limited to the information required in Corporate Code §25102(q) (3) (A—G)-especially omitted were the names directors, officers, partners, members, or trustees of the issuer. In effect Defendants fail to explain who owned and operated Reliant as required by law.

c. Defendant Reliant failed to disclose Defendant Scott Grady, who was an owner, member and manager of Reliant, had been disbarred by the California State Bar.

73. Defendants Reliant, Michaels and Grady sold fractional life settlements by making false and misleading statements as set forth above and said Defendants knew or should have known that the statements were false and/or that they were concealing material facts. Defendants Reliant, Michaels and Grady knew or should have known that there were important facts that needed to be known to make a proper informed decision on the investments. As a result, the investments were portrayed in a false light and Plaintiffs and Class members did not have sufficient material facts to make an informed decision about investing in Reliant Life Shares.

74. It was also an improper to do the above and take investor's money under the circumstances set forth in this Complaint. Plaintiffs are informed and believe that Defendants Reliant, Michaels and Grady failed to describe the investment truthfully especially when describing how debilitating the premiums can become as the insured ages, and how the rising premiums affects the rate of return.

75. Selling securities and/or an investment opportunity like this under these pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of Corp Code §25401.

76. Plaintiffs and members of the Class relied upon the above misrepresentations and failures to disclose material facts to make their investments in Reliant Life Shares. The reliance was reasonable and justified based upon their circumstances.

77.     By reason of the above, Plaintiffs and members of the Class are entitled to rescission and damages, and or the damages set forth in Civil Codes §25501 or 25501.5, or according to all remedies available by law.

78.     Defendants Reliant, Michael and Grady's conduct was in reckless disregard for the rights and safety of Plaintiffs and all Class members and constitutes oppression, fraud, and malice such that punitive and / or exemplary damages are appropriate pursuant to either Civil Code section 3294, section 3345 or both.

79.     Plaintiffs seek all damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees if provided by statute.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CORPORATIONS CODE §§ 25504.1

**By Plaintiffs for themselves and the Class Against All Trustee Defendants**

**and Does 1-20**

80.     Plaintiffs incorporate by reference all the above paragraphs including each wrongdoing, and lack of disclosure already alleged in the general allegations section of this Complaint.

81.     California Corporations Code § 25504.1 provides that "Any person who materially assists in any violation of section 25401…with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation."

82.     As alleged above, Defendants Reliant, Michaels and Grady violated California Corporations Code § 25401 based on misrepresentations and omissions of material facts.

83.     Plaintiffs are informed and at all times when Defendants Reliant, Michaels and Grady were making these material misrepresentations and omissions of material facts in the Offering Circulars, Reliant's website and marketing Brochures about the benefit of having an independent third party Trustee and Escrow Officer protect and safeguard the investors funds, the Trustee Defendants knew that Defendants Reliant, Michaels and Grady were making material misrepresentations and omissions and were using investors' funds to make unauthorized excessive distributions to themselves and later to fund payments by Defendant Reliant to Cooper to pay off Coopers Judgment against Reliant, Michaels and Grady.

26

84.     Defendants Michaels and Grady took excessive compensation from Reliant, rendering Reliant insolvent. The conduct of Defendants Michael and Grady looting Reliant led to the court in the Cooper Litigation to appoint a receiver to liquidate Reliant's assets to pay off the judgment in favor of Cooper.

85.     As a direct and proximate result of the above conduct by the Trustee Defendants, Plaintiffs and class members have been damaged in an amount to be proven at trial.

86.     The causes of action based on California Corporations Code violations are equitably tolled against the Trustee Defendants because the Trustee Defendants are equitably estopped from contending that the California Corporations Code violations are barred by the statute of limitation because the Trustee Defendants aided and abetted Defendants Reliant, Michaels and Grady in concealing from Plaintiffs and the Class members that they had been sold unqualified/unregistered securities through fraudulent and deceitful means. Additionally, Plaintiffs are informed and believe that the Trustee Defendants either knew that Defendants Michaels and Grady were fraudulently using investors funds to pay themselves excessive compensation rendering Reliant insolvent, which investor funds were supposed to be used to fund additional premium payments on policies whose reserves to pay premiums had been exhausted, or should have known with reasonable diligence.

87.     Plaintiffs on behalf of themselves and the Class seek all damages as allowed by law, including but not limited to the amount of their initial investments in Reliant Life Shares, any additional premiums they had to make to keep policies in force, prejudgment interest on those amounts.

## **FOURTH CAUSE OF ACTION**

## **BREACH OF FIDUCIARY DUTY**

**By Plaintiffs for themselves and the Class Against Reliant Defendants, Trustee Defendants and Does 1-20**

88.     Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including negligence, wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this Complaint and such allegation in any previous cause of action.

89.     Defendant Reliant through its statements in the Offering Circular, the website and

1  marketing Brochures encouraged Plaintiffs and all Class members to repose trust and confidence in

2  Reliant. Plaintiffs and all Class members were justified in reposing trust and confidence in Reliant

3  based on the statements made to them by Reliant in the Offering Circulars, its website, and its

4  marketing Brochures.

5      90.    The Trustee Defendants, as the trustees of the Reliant Trusts established by Defendant

6  Reliant, owed fiduciary duties to the beneficiaries of the Trusts (i.e., the class members, including

7  Plaintiffs).  This fiduciary relationship began as soon as the class members, including Plaintiffs,

8  purchased an interest in the death benefit of a life insurance policy owned by the Reliant Trust.  At that

9  point, the class member, including Plaintiffs, by way of their interest in the death benefits of a life

10  insurance policy owned by the Reliant Trust, became a beneficiary of the Reliant  Trust.

11      91.    Defendant Reliant and the Trustee Defendants, as trustees of the Reliant Trusts, had a

12  duty of good faith and full disclosure of all material facts and to act in the best interest of the

13  beneficiaries. Reliant and the Trustee Defendant breached their fiduciary duties by failing to disclose

14  to investors and potential investors, among other things, that:

15          a.  Failing to disclose to Plaintiffs and all Class members that funds demanded by Reliant to

16              maintain insurance policies were not being deposited into the Reliant Trust, but instead

17              were deposited into an account as First Western Bank, which was not an escrow

18              account, and from which accounts Michaels and Grady could take investors' funds for

19              their own use. Plaintiffs are informed and believe that Defendants Reliant, Michaels and

20              Grady used only a portion of those funds deposited into the account at First Western

21              Bank to pay premiums, and Michaels and Grady diverted a material portion of the

22              investors funds for excessive compensation to Defendants Michaels and Grady, and to

23              make payments to Cooper on his Judgment against Reliant, Michaels and Grady.

24          b.  Failed to provide Plaintiffs and all Class members with 90 days advance notice when

25              capital calls were made as specified in Reliant's Purchase Agreement;

26          c.  Failing to disclose that in the event of a cash call, the premiums would be substantially

27              higher than disclosed in the investor's Disclosure Statements.

28      92.    Pursuant to Sections 25506 and 25507 of the California Corporations Code,

28

CLASS ACTION COMPLAINT

1    Plaintiffs had five years and two years respectively to seek rescission of their investments.

2    Therefore, from the moment that the particular class member, including Plaintiffs, remitted

3    their consideration to the Trustee Defendants for their interest in the death benefit of a life

4    insurance policy, the Trustee Defendants had a duty to disclose to class members, including

5    Plaintiffs, that misrepresentations and omissions were made to them, and class members,

6    including Plaintiffs, could have, within the statutory period under Sections 25506 and 25507

7    rescinded their investments.

8        93.    As a direct and proximate result of the above conduct by Reliant and the Trustee

9    Defendants, Plaintiffs and Class members were damaged in an amount to be proven at trial.

10       94.    By performing the foregoing acts, Reliant and the Trustee Defendants acted with malice,

11   oppression, or fraud. Alternatively, the acts of Reliant and  the Trustee Defendants performed were

12   despicable and in conscious disregard of the probability of damage to Plaintiffs and the rest of the

13   putative Class members and support an award of punitive damages pursuant to Civil Code section

14   3294 in an amount designed to punish Reliant and the Trustee Defendants and to deter such conduct in

15   the future. To the extent that such acts by Reliant and the Trustee Defendants were conducted through

16   their employees or agents, those employees were either its officers, directors or managing agents of

17   Reliant and the Trustee Defendants, or such officers, directors or managing agents were aware in

18   advance that such conduct would occur, exhibited conscious disregard for the rights of others in

19   employing the employee, or directed or ratified such conduct by its employee(s) and agents.

**FIFTH CAUSE OF ACTION**

**FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.,)**

**By Plaintiff James Reed on behalf of himself and the Elder Abuse Subclass**

**Against All Defendants and Does 1-20**

24       95.    Plaintiff James Reed incorporates by reference all the above paragraphs as though fully

25   set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general

26   allegations section of this Complaint and such allegation in all previous cause of action.

27       96.    As an "elder," within the meaning of Welf. & Inst. Code § 15610.27, Plaintiff James

28   Reed and members of the Elder Abuse Subclass were entitled to the heightened rights and special

1  statutory protections provided by California's Elder and Dependent Adult Civil Protection Act set forth

2  in Welf. & Inst. Code § 15600 et sec.

3      97.    Under Welf. & Inst. Code § 15610.30, a person is liable for financial elder abuse or for

4  assisting financial elder abuse if they obtained the elder's property when they knew or should have

5  known that the conduct is likely to be harmful to the elder, including: (1) hiding, taking, retaining,

6  obtaining and/or misappropriating Plaintiff's property, which is what has been alleged in this

7  Complaint, or (2) by the Trustee Defendants assisting and aiding and abetting Defendants Reliant,

8  Michaels and Grady in harming the members of the Elder Abuse Subclass.

9      98.    Defendants conduct in selling Plaintiff James Reed and the other members of the Elder

10  Abuse Subclass Reliant Life Share investments was a predatory practice employed to take advantage of

11  a vulnerable elderly persons for their own financial gain or if not intended to do so, it had that effect,

12  and after knowing this, these Defendants kept doing it, implying total purposeful intent to take

13  advantage instead of protect these individuals.

14      99.    Because Plaintiffs and each Class member were required to include their date of birth in

15  their respective Reliant Purchase Agreements, Defendants Reliant, Michaels, Grady and the Trustee

16  Defendants knew which investors were over the age of 65 at the date they invested in Reliant Life

17  Shares. Despite being in possession of the above facts, Defendants Reliant, Michaels, Grady,

18  knowingly assisted and aided and abetted by the Trustee Defendants, committed Financial Elder Abuse

19  on Plaintiff James Reed and the members of the Elder Abuse Subclass.

20      100.    The conduct of Reliant Defendants, Michaels and Grady, aided and abetted by the

21  Trustee Defendants, was in reckless disregard for the rights and safety of the members of the Elder

22  Abuse Subclass and proximately caused economic and non-economic damages to Plaintiff and to the

23  Elder Abuse Subclass.

24      101.    The damages to Plaintiff James Reed and the Elder Abuse Subclass are to be trebled,

25  and attorney's fees allowed by statute between the parties. Defendants Reliant, Michaels, Grady, and

26  the Trustee Defendants' conduct was in reckless disregard for the rights and safety of the James Reed

27  and Elder Abuse Plaintiffs and constitutes oppression, fraud, and malice such that exemplary damages

28  are appropriate and requested under either Civil Code sections 3294 or 3345 or both.

CLASS ACTION COMPLAINT

## SIXTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code §§ 17203 et seq.,)

#### By Plaintiffs for themselves and the Class Against All Defendants and Does 1-20

102.     Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including negligence, wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this Complaint and such allegation in any previous cause of action

103.     At all times relevant hereto, California Business and Professions Code §§17200, et seq., were in full force and effect. Section 17200 of the Business and Professions Code provides, in relevant part, that "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice. . ."

104.     Defendants and Does 1-20, and each of them, are "persons" as defined under Business and Professions Code §17021. Each of the directors, officers, and/or agents of Defendants, are equally responsible for the acts of the other directors, officers, employees and/or agents as set forth in Business and Professions Code §17095.

105.     Plaintiffs, and each of them, have suffered injury in fact and have lost money as a result of the conduct of Defendants, as previously alleged.  As alleged herein above, Defendants engaged in an unfair, unlawful and deceptive business practices including aiding and abetting the sale of Reliant investments, and failing to disclose that the investments were unregistered securities.

106.     The conduct of Defendants and those acting in the course and scope of their agency of Defendants, in making negligent misrepresentations regarding Reliant to the public, was wrongful. Defendants failed to conduct due diligence prior to making the representations about Reliant and its program that were repeated to Plaintiffs when soliciting Plaintiffs to invest in Reliant's program. Defendants failed to adequately train and supervise agents as alleged herein.

107.     Defendants failed to adequately train and supervise agents, to prevent them from encouraging from purchasing unregistered securities in the guise of purchasing life settlements.

108.     Through their actions alleged herein, Defendants have engaged in unfair competition within the meaning of California Business & Professions Code § 17200, because their conduct constituted an unfair business practice perpetrated against members of the general public.

31

109. Business and Professions Code §17203 provides that the Court may take those steps necessary to prevent such unfair conduct and may order Defendants to pay restitution to an aggrieved party.

110. Section 17202 of the California Business and Professions Code states: "Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition."

111. As the actual and proximate cause of Defendants engaging in unfair business practices in violations of California Business & Professions Code section 17200, et seq., Plaintiffs have lost, or are likely to lose their investments totaling an amount to be established at trial. Plaintiffs seek all equitable remedies available, including but not limited to restitution, disgorgement and an equitable accounting.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for:

1. First Cause of Action for Negligence:

    (i) General and special damages pursuant to Civil Code §3281 according to proof at trial;

    (ii) Prejudgment interest pursuant to Civil Code §3287.

2. Second Cause of Acton for violation of Corp Code §§25401 and 25501:

    (i) General and special damages pursuant to Civil Code §3281 according to proof at trial.

    (ii) Prejudgment interest pursuant to Civil Code §3287

3. Third Cause of Action for violation of Corp Code §25504.1:

    (i) General and special damages pursuant to Civil Code §3281 according to proof at trial.

    (ii) Prejudgment interest pursuant to Civil Code §3287

4. Fourth Cause of Action – Breach of Fiduciary Duty:

    (i) General and special damages pursuant to Civil Code §3281 according to

32

proof at trial;

(ii)  Prejudgment interest pursuant to Civil Code §3287; and

(iii)  Exemplary Damages pursuant to Civil Code §3294.

5.  Fifth Cause of Action – Financial Elder Abuse:

(i)  For general damages, special damages and attorney's fees and costs pursuant to Welf. & Inst. Code § 15600 et seq.;

(ii)  For exemplary damages pursuant to Civil Code 3294 or 3345 or both.

6.  Sixth Cause of Action – Unfair Business Practices:

(i)  An order, ordering all Defendants, their agents, servants, and employees, and all persons acting, directly or indirectly, in concert with them, to restore all funds acquired by means of any act or practice declared by this Court to be unlawful, unfair, or fraudulent and therefore constitute unfair competition under Section 17200, et seq. of the California Business and Professions Code;

(ii)  For injunctive relief pursuant to California Business & Professions Code §17203, consisting of, inter alia: (a) a declaration that Defendants have engaged in unlawful and unfair and fraudulent business acts and practices in violation of California Business & Professions Code §17200, et seq.; (b) a preliminary and/or permanent injunction enjoining Defendants and their respective successors, agents, servants, officers, directors, employees and all other persons acting in concert with them from pursuing the policies, acts and practices complained of herein and prohibiting Defendants from continuing such acts of unfair and illegal business practices;

(iii)  For an equitable accounting; and,

(iv)  Restitution, or restitution like recovery, including, but not limited to, Plaintiffs' principal amounts.

**<u>FOR ALL CAUSES OF ACTION</u>**

1.  For an order certifying the case as a class action naming Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

33

1       2.     For prejudgment interest;

2       3.     For attorneys' fees pursuant to applicable law, including but not limited to Civ.

3  Code §1021.5;

4       4.     For costs of suit; and,

5       5.     For such other relief as may be appropriate.

6

7  PLAINTIFFS REQUEST JURY TRIAL.

8

9  Dated: August 17, 2023

10                                    **FOLEY BEZEK BEHLE & CURTIS, LLP**

11                                    **DONAHOO & ASSOCIATES, PC**

13                      By:_____

14                          Thomas G. Foley, Jr.
                              Richard E. Donahoo

CLASS ACTION COMPLAINT

1
2
3
4              JAMES REED, et al. v. RELIANT LIFE SHARES, LLC et al.
5                              Exhibits to Complaint
6
7
8    EXHIBIT A  State of California Desist and Refrain Order Dated 12-14-22
9    EXHIBIT B  Reed Purchase Agreement
10   EXHIBIT C  Reliant Life Shares, LLC Website, February 2015
11   EXHIBIT D  Reliant Life Shares, LLC Brochure
12   EXHIBIT E  Illustration Reed Life Settlement No. 60163540
13   EXHIBIT F  June 2, 2021 Capital Call Letter to Reed
14   EXHIBIT G  January 23, 2022 Capital Call Letter to Reed
15   EXHIBIT H  February 21, 2023 Capital Call Letter to Reed
16   EXHIBIT I  Findings of Fact, Conclusions of Law, Cooper Litigation September 6, 2019
17   EXHIBIT J  Second Amended Judgment, Cooper Litigation
18   EXHIBIT K  Further Status Report, Cooper Litigation
19   EXHIBIT L  Order for Full Receivership, Reliant Life Shares, LLC date August 2, 2023
20   EXHIBIT M  Reliant Life Shares, LLC Receiver's August 14, 2023 Ex Parte Application
21   EXHIBIT N  Court of Appeal Opinion, Cooper Litigation, April 4, 2023
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT