**BRYAN CAVE LEIGHTON PAISNER LLP**
David Harford (SBN 270696)
1920 Main Street, Suite 1000
Irvine, CA 92614
Telephone:  (949) 223-7000
E-mail: david.harford@bclplaw.com

Adam B. Stern (admitted pro hac vice)
Benjamin J. Hogan (pro hac vice admission forthcoming)
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone:  (303) 866-0359
E-mail: adam.stern@bclplaw.com
E-mail: ben.hogan@bclplaw.com

Attorneys for Defendant First Western Trust Bank

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES REED and CAROLYN REED, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RELIANT LIFE SHARES LLC, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-08577-SB-AGR (Lead Case)<br><br>Consolidated with Case No. (2:23-cv-00460 SB (AGRx)<br><br>Judge Hon. Stanley Blumenfeld, Jr.<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT FIRST WESTERN TRUST BANK TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 1, 2024<br>Time: 8:30 a.m.<br>Dept.: 6C<br><br>FAC Filed: December 15, 2023<br>Complaint: August 17, 2023<br>Trial Date: March 17, 2025 |

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

DEFENDANT FIRST WESTERN TRUST BANK'S MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 1, 2024 or as soon thereafter as may be heard, in the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant First Western Trust Bank will, and hereby does, move this Court for an order dismissing all claims against it under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim upon which relief may be granted.

First Western Trust Bank's Motion to Dismiss is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all pleadings and records on file in this action, and such briefing, papers, and argument as may be permitted in this matter.

This motion is made following the conference of counsel in compliance with Local Rule 7-3, as forth in the certification of David Harford below:

I certify that the parties met by videoconference on December 27, 2023, thoroughly discussed each and every issue raised in this motion and attempted in good faith to resolve the motion in whole or in part.

Dated: January 5, 2024                    Respectfully submitted,

                                          **BRYAN CAVE LEIGHTON PAISNER LLP**


                                          By: _/s/ David A. Harford_____
                                               David A. Harford

                                          Attorney for First Western Trust Bank

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

i

DEFENDANT FIRST WESTERN TRUST BANK'S MOTION TO DISMISS

1

## TABLE OF CONTENTS

2

**Page**

3

INTRODUCTION .................................................................................................... 1

4

SUMMARY OF THE COMPLAINT AND EXHIBITS ......................................... 2

5

    A.    Reliant's Marketing and Sale of Interests in Life Insurance Policies ........................................................................................... 2

6

    B.    The Reeds ................................................................................... 3

7

    C.    FWTB's Role as Trustee and Escrow Agent ............................ 3

8

    D.    Reliant Misappropriates Investor Funds ................................... 6

    E.    Allegations against FWTB .......................................................... 6

9

LEGAL STANDARD ............................................................................................. 6

10

ARGUMENT ........................................................................................................... 7

11

I.     ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS. ............................................................... 7

12

    A.    All claims are time-barred and Plaintiffs have not plausibly pleaded they are entitled to delayed discovery. ........................ 7

13

14

    B.    The claim for violation of Corporations Code § 25401 (Count IV) is time-barred regardless of any delayed discovery. .................... 10

15

II.    PLAINTIFFS' CLAIMS FOR NEGLIGENCE (COUNTS I & II) AND BREACH OF FIDUCIARY DUTY (FIRST COUNT V) FAIL BECAUSE PLAINTIFFS DO NOT ALLEGE THE BREACH OF A LEGALLY COGNIZABLE DUTY OWED BY FWTB TO PLAINTIFFS. ....................................................................................... 11

16

17

18

    A.    Negligent Misrepresentation ................................................... 11

19

    B.    Negligence and Gross Negligence ........................................... 12

20

    C.    Breach of Fiduciary Duty ......................................................... 15

21

III.   PLAINTIFFS' FINANCIAL ELDER ABUSE CLAIM (SECOND COUNT V) MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE FWTB HAD ACTUAL KNOWLEDGE OF THE WRONGFUL CONDUCT. ................................................................. 17

22

23

24

IV.   PLAINTIFFS' CLAIM FOR UNFAIR BUSINESS PRACTICES MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO PLEAD THE CLAIM WITH THE REQUIRED PARTICULARITY OR ALLEGE FWTB'S PERSONAL PARTICIPATION IN ANY UNFAIR BUSINESS PRACTICES............................................................... 19

25

26

27

CONCLUSION....................................................................................................... 21

28

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
*Apollo Cap. Fund, LLC v. Roth Cap. Partners,*
LLC, 158 Cal. App. 4th 226 (2007) ................................................................15

5
*Aryeh v. Canon Bus. Solutions, Inc.,*
55 Cal. 4th 1185 (2013) ...................................................................................8

6

7
*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................6

8
*Barber v. Halverson,*
No. 21-cv-607, 2021 WL 5998573 (D. Minn. Sept. 15, 2021) ........................8

9
*Bortz v. JPMorgan Chase Bank, N.A.,*
No. 21-cv-618, 2022 WL 1489832 (S.D. Cal. May 10, 2022), *aff'd*
10
*sub nom.*, No. 22-cv-55582, 2023 WL 4700640 (9th Cir. July 24,
2023) ..............................................................................................................18

11
*Chen v. PayPal, Inc.,*
61 Cal. App. 5th 559 (2021) ...........................................................................20

12
*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,*
13
181 P.3d 142 (Cal. 2008) ..........................................................................15, 17

14
*Dougherty v. Bank of Am., N.A.,*
177 F. Supp. 3d 1230 (E.D. Cal. 2016) ...........................................................7

15
*Fox v. Ethicon Endo-Surgery, Inc.,*
35 Cal. 4th 797 (2005) .....................................................................................8

16
*Funke v. Sorin Grp. USA, Inc.,*
147 F. Supp. 3d 1017 (C.D. Cal. 2015) ...........................................................5

17

18
*In re Gilead Sciences,*
536 F.3d 1049 (9th Cir. 2008) .....................................................................7, 14

19
*Jolly v. Eli Lilly & Co.,*
44 Cal. 3d 1103 (1988) ...............................................................................8, 10

20
*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) .......................................................................21

21
*Kemp v. Wells Fargo Bank, N.A.,*
22
No. 17-cv-01259-MEJ, 2017 WL 4805567 (N.D. Cal. Oct. 25, 2017)..............20

23
*Kenneally v. Bank of Nova Scotia,*
711 F. Supp. 2d 1174 (S.D. Cal. 2010) ......................................................19, 20

24
*Lease LLC v. Idanta Partners. Inc.,*
225 Cal. App. 4th 1451 (2014) ........................................................................7

25
*Loza v. Wells Fargo Bank, N.A.,*
No. 20-cv-1354, 2020 WL 13281409 (C.D. Cal. Apr. 21, 2020) ..................8, 9

26
*Miller v. Bank of Am., N.A.,*
No. 1:21-cv-00337, 2022 WL 3704093 (E.D. Cal. Aug. 26, 2022)..................18

27
*Mills v. Forestex Co.,*
28
108 Cal. App. 4th 625 (2003) ...........................................................................8

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

DEFENDANT FIRST WESTERN TRUST BANK'S MOTION TO DISMISS

*Paz v. State of California*,
　　994 P.2d 975 (2000) ........................................................................... 12

*Puri v. Khalsa*,
　　674 Fed. Appx. 679 (9th Cir. 2017) ................................................... 12

*Ragland v. U.S. Bank National Ass'n.*,
　　209 Cal. App. 4th 182 (2012) ............................................................ 11

*Rosencrans v. Dover Images, Ltd.*,
　　192 Cal. App. 4th 1072 (2011) .......................................................... 13

*Sagehorn v. Engle*,
　　141 Cal. App. 4th 452 (2006) .............................................................. 9

*Santa Barbara v. Sup. Ct.*,
　　161 P.3d 1095 (2007) ......................................................................... 13

*SEC v. Seaboard Corp.*,
　　677 F.2d 1301 (9th Cir. 1982) ........................................................... 10

*Sprewell v. Golden State Warriors*,
　　266 F.3d 979 (9th Cir. 2001) ............................................................... 7

*Swartz v. KPMG LLP*,
　　476 F.3d 756 (9th Cir. 2007) .................................................. 7, 12, 21

*United States v. Ritchie*,
　　342 F.3d 903 (9th Cir. 2003) ............................................................. 14

*In re Versign, Inc., Derivative Litig.*,
　　531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................ 10

*Vess v. Ciba-Geigy Corp. USA*,
　　317 F.3d 1097 (9th Cir. 2003) ............................................................. 7

**Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. ..................................................... 19

Cal. Bus. & Prof. Code § 17208 ................................................................. 7

Cal. Civ. Proc. Code § 338(a) ..................................................................... 7

Cal. Civ. Proc. Code § 338(d) ..................................................................... 7

Cal. Corp. Code § 25401 ..................................................................... 2, 10

Cal. Corp. Code § 25506(b) ................................................................. 7, 10

Cal. Welf. & Inst. Code § 15610.30(a)(2) ................................................ 17

Cal. Welf. & Inst. Code § 15657.7 ............................................................. 7

Conn. Gen. Stat. § 34-500 et seq. ............................................................ 16

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................... 21

**Other Authorities**

LISA, *Online Directory*,
　　https://www.lisa.org/AF_MemberDirectory_custom.asp ...................... 14

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

DEFENDANT FIRST WESTERN TRUST BANK'S MOTION TO DISMISS

# INTRODUCTION

First Western Trust Bank ("FWTB") should not be a defendant in this case. Plaintiffs allege that the Reliant Defendants and their proprietors, Defendants Grady and Michaels, duped them and other investors into buying fractions of other people's life insurance policies as investments, and then misappropriated portions of those investments. In search of a solvent defendant, Plaintiffs implausibly blame FWTB for their misfortunes.

Between 2015 and 2022, FWTB acted as the escrow agent and trustee for six Reliant trust series, meaning that FWTB held accounts containing the premium reserves for six life insurance policies in which the putative class invested, paid premiums from the accounts, and would have paid out the policy benefits had any of the policies matured. As set forth in the agreements attached to the Complaint and shown by Plaintiffs' allegations, FWTB's role was limited to holding the reserve accounts and disbursing money from them at Reliant's direction. FWTB made no representations to Plaintiffs, voluntarily undertook no duties to ensure that Plaintiffs' investments were sound, and did not participate in the alleged wrongdoing that is the subject of Plaintiffs' claims against the Reliant Defendants, Grady, and Michaels.

Plaintiffs' claims against FWTB fail as a matter of law for three reasons. *First*, all claims are barred by the relevant statutes of limitations. Plaintiffs invested in Reliant Life Shares in 2014 and they knew or should have known Reliant was embroiled in fraud and mismanagement lawsuits by December 2015 when one Reliant founder sued the other two founders and Reliant for fraud, mismanagement, and dissipation of assets. *See* First Am. Compl., ECF No. 40 ("Compl.") ¶ 16.

*Second*, Plaintiffs fail to allege any misrepresentation made by FWTB. Plaintiffs' claim that FWTB was a party to a fraud scheme also is implausible because, as Plaintiffs' own allegations and exhibits show, FWTB was not involved with the Reliant entities in 2014 when Plaintiffs invested in Reliant Life Shares. *See* Compl. ¶ 46, Ex. H, Ex. K.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

1

MEMORANDUM OF POINTS AND AUTHORITIES

*Third*, the broad duties that Plaintiffs assert FWTB owed to Plaintiffs defy the contractual agreements, are premised on implausible facts, and are contrary to the law.

Because all claims against FWTB fail as a matter of law or depend upon incurable factual deficiencies, FWTB requests that they be dismissed with prejudice.

## SUMMARY OF THE COMPLAINT AND EXHIBITS

This case involves two class actions; one brought by the Reed Plaintiffs and the other brought by Plaintiff Douglass, who does not assert claims against FWTB. The Reed Plaintiffs assert six claims against FWTB: (1) negligence, (2) gross negligence, (3) materially assisting violations of California Corporations Code § 25401, (4) breach of fiduciary duties, (5) financial elder abuse, and (6) unfair business practices.

### A.    Reliant's Marketing and Sale of Interests in Life Insurance Policies

In 2013, Reliant Life Shares, LLC ("Reliant") began soliciting investors to purchase fractionalized interests in life insurance policies. Compl. ¶ 33. Investors purchased an interest in another person's life insurance policy through Reliant; Reliant purchased the policy and assumed responsibility for paying the policy's premiums through maturation. Compl. Ex. A at 4–6. When the insured died, the policy would "mature," and the investor would receive its relative portion of the policy payout. *Id.* at 4–6, 49.

Reliant marketed these investment opportunities on its website, in informational brochures, and via other avenues. Compl. ¶¶ 41–42, 45–46. Reliant's marketing information stated that it worked with banks that served as trustees and/or escrow agents that accepted investment funds, managed "premium reserve" accounts, made payments to insurance carriers, and distributed assets to investors when a life insurance policy matured. *Id.* ¶¶ 41–42. The Complaint alleges that over time Reliant "featured" several entities on its website as a trustee of the Reliant Life Shares Series Trust, misrepresenting the roles of these entities and claiming they "ensure[d] safekeeping of the assets placed in trust." *Id.* ¶ 42. Plaintiffs attach exhibits to demonstrate Reliant's specific representations regarding the use of the Trustee

2

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

Defendants' names in marketing materials—but those marketing materials do <u>not</u> discuss FWTB or associate FWTB with Reliant. *See, e.g.*, Compl. Ex. B (UMB Bank), Ex. C (Bank of Utah), Ex. N (Christiana Trust). Instead, Plaintiffs conclusorily allege that the same such representations must have existed on Reliant's website for FWTB. *Id.* ¶ 47.

### B.    The Reeds

On July 29, 2014, James and Carolynn Reed purchased an interest in a life insurance policy for $50,000 and entered into a "Fractional Life Settlement Purchase Agreement" ("Purchase Agreement"). Compl. ¶ 32, Ex. P. FWTB was not a party to this contract, and this sale occurred prior to when FWTB became a trustee or escrow agent in June 2015. *Id.* ¶ 47, Ex. H (Trust Agreement), Ex. K (Successor Agreement). The Reeds signed the Purchase Agreement, acknowledging that the "Escrow Agent is not representing the Purchaser in this transaction and has no responsibility to the Purchaser with regard to this transaction other than to hold funds in escrow." *Id.* Ex. P at 2 (Section 1(h)). The Reeds "recognize[d] that the Trustee and Escrow Agent shall not incur any liability to the Seller or to Purchaser for any damages, losses or expenses which either party may sustain or incur" unless "a direct result of the gross negligence or intentional misconduct of Trustee or Escrow Agent." *Id.* (Section 1(i)). Both the Reeds and Reliant "agree[d] to indemnify and hold harmless Trustee and Escrow Agent from and against all losses, except those caused by gross negligence or intentional misconduct, claims, damages, liabilities and expenses" including reasonable attorney's fees. *Id.* at 2–3.

### C.    FWTB's Role as Trustee and Escrow Agent

On June 16, 2015—nearly a year after the Reeds invested in Reliant Life Shares—FWTB agreed to serve as Trustee of the Reliant Life Shares Series Statutory Trust for a tranche of life insurance policies, including the Reeds'. Compl. Ex. H. As trustee, FWTB's duties were limited to holding and distributing the Trust's funds at the direction of Reliant Life Shares as the Grantor. *Id.* The Trust Agreement did not

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

3

allow FWTB to manage the investment as Plaintiffs suggest. Instead, it restricted FWTB's conduct, including as follows:

- **Section 4.2.** FWTB "shall perform such duties and engage in such activities, and only such duties and activities, as are specified in [the Trust Agreement], or as the Trustee may be directed from time to time in writing, pursuant to this Agreement, or required under the Connecticut Act (subject to the terms of this Agreement)[.]" *Id.* at 15 (emphasis added).

- **Section 4.1(p).** "Except as otherwise specifically provided in" the Trust Agreement, FWTB "shall not have any discretionary powers or authority with respect to the Trust or the administration of this Agreement, and shall in all respects act at the direction of the Grantor as provided herein." *Id.* at 14–15. This included paying out money from the Trust's assets, "[a]t the direction of" Reliant. *Id.* at 13–14 (Section 4.1(j)).

- **Section 4.1(f).** All investment decisions must be "as directed in writing by" Reliant. *Id.*

- **Section 4.1(g).** Any "distributions to the Beneficiary of any Series . . . [must be] as directed by" Reliant. *Id.*

Section 4.5(h) states that the Trustee Agreement abrogates any duties not outlined within it, and "[t]o the extent that, at law (common or statutory) or in equity, the Trustee has duties (including fiduciary duties) to the Trust, Grantor, the Beneficiaries or any other Person, such duties may be restricted or eliminated by provisions in this Agreement and as permitted by the Connecticut Act." *Id.* at 16–17. Further, Section 4.5(f) specifies that FWTB "shall not be liable for the default or misconduct of Grantor," while Section 4.6(e) states that FWTB "shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

4

or other paper or document, unless specifically requested in writing to do so by Grantor." *Id.*

The Trust Agreement expressly outlines that FWTB "shall not be liable . . . for any action taken, suffered, or omitted by it or any error of judgment, in each case made in good faith by any Responsible Officer of the Trustee, unless it shall be proved that the Trustee was grossly negligent or acted with willful misconduct or in bad faith in ascertaining the pertinent facts." *Id.* at 15 (Section 4.1(a)(i)).

The Trust Agreement is "governed by and enforced in accordance with the internal laws of the state of Connecticut without regard to any otherwise applicable conflict of laws rules" and "the obligations, rights and remedies of the parties [Reliant and FWTB] and each other person subject to or bound by this Trust Agreement shall be determined in accordance with such laws." *Id.* at 21–22. The Trust Agreement's choice-of-law provision disclaims "the establishment of fiduciary or other standards of responsibility or limitations on the acts or powers of trustees that are inconsistent with the limitations or authorities and powers of the trustee [FWTB] as set forth or referenced in this agreement." *Id.* at 22.

During the same period FWTB was a trustee, it also served as an escrow agent and held funds in an escrow account for the Reliant Trust. Compl ¶ 76, Ex. K (Recital A). The Complaint does not list the duties FWTB agreed to perform under such an escrow agreement, but they are similarly limited and subject to the direction from Reliant. *See* Def.'s Req. for Judicial Notice Ex. A at 4–7, filed concurrently with this Motion (explaining the "Escrow Agent has no discretionary rights or powers," it "shall not be bound to make any investigation into the facts," "[i]n no event shall Escrow Agent be liable ore responsible to Reliant-LS, any investor or any other person," and it "is not responsible for any of the obligations of Reliant [Life Shares]"); *see also Funke v. Sorin Grp. USA, Inc.*, 147 F. Supp. 3d 1017, 1022 (C.D. Cal. 2015) ("[A] court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

5

judicial notice, without converting the motion to dismiss into a motion for summary judgment.").

On December 21, 2022, pursuant to the Instrument of Termination, Appointment and Acceptance ("Successor Agreement"), First Western resigned as Escrow Agent and Trustee for its six series and appointed Bank of Utah as its successor. Compl. Ex. K. It transferred all assets to Bank of Utah. *Id.* at Section 103.

### D. Reliant Misappropriates Investor Funds

Plaintiffs' grievances all derive from Reliant's alleged misappropriation of investor funds. Plaintiffs allege Reliant, through Michaels and Grady, "looted" millions of dollars of the Plaintiffs' investment funds in order to support an "extravagant lifestyle." Compl. ¶ 24. In December 2015, Reliant, Michaels, and Grady were sued for fraud and mismanagement of those very investments by their co-owner, Daniel Cooper. *Id.* ¶ 16.

### E. Allegations against FWTB.

Plaintiffs' do not allege a direct role for FWTB in the misappropriation of their investments. Instead, Plaintiffs allege that FWTB knew or should have known that Grady and Michaels were mismanaging Reliant based on FWTB's role as trustee and its alleged undertaking of duties that are directly contradicted by documents attached to the Complaint. The allegations specifically mentioning FWTB generally consist of group pleading where it is lumped together with other banks as "Trustee Defendants." In the 91-page complaint, FWTB is mentioned by name in only ten paragraphs. Compl. ¶¶ 3, 9, 42, 47, 52–53, 56, 66, 76, 157.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to state a "plausible" claim to relief; facts giving rise to a mere "possibility" that a defendant acted unlawfully are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While the Court accepts well-pleaded allegations as true, it need not accept allegations that are "merely conclusory, unwarranted deductions of

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

6

fact, or unreasonable inferences." *In re Gilead Sciences*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To survive a motion to dismiss "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* at 1106 (cleaned up). When suing more than one defendant, a plaintiff cannot "merely lump multiple defendants together" but rather must differentiate the allegations and "inform each defendant separately of the allegations surrounding his alleged participation" in the alleged fraudulent scheme. *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quotations omitted).

## ARGUMENT

I.    **All of Plaintiffs' claims are barred by the statute of limitations.**

    A.    **All claims are time-barred and Plaintiffs have not plausibly pleaded they are entitled to delayed discovery.**

Plaintiffs' claims are governed by varying statutes of limitations, but none is longer than five years. *See, e.g.*, *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1244 (E.D. Cal. 2016) (two-year statute of limitations for negligence claims); Cal. Corp. Code § 25506(b) (five-year statute of limitations for claims under Section 25504.1 of the California Corporations Code); *Am. master Lease LLC v. Idanta Partners. Inc.*, 225 Cal. App. 4th 1451, 1478 (2014) (three-year statute of limitations for breach of fiduciary duty); Cal. Welf. & Inst. Code § 15657.7 (four-year statute of limitations for financial elder abuse); Cal. Bus. & Prof. Code § 17208 (four-year statute of limitations); Cal. Civ. Proc. Code §§ 338(a), (d) (three-year statute of limitations for actions upon a liability created by statute or for relief based on fraud or mistake).

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

7

"The limitations period . . . runs from the moment a claim accrues." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013). An "exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Id.* at 807 (cleaned up). "To rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (cleaned up).

Discovery occurs, and the statute of limitations period begins to run, when a plaintiff suspects or should suspect their injuries were caused by wrongdoing. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1998); *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 646 (2003). A plaintiff is held to "knowledge that could reasonably be discovered through investigation of sources open to her." *Jolly*, 44 Cal. 3d at 1109. For example, "If a plaintiff has the opportunity to obtain knowledge from [public] sources . . . such as *public records* . . . the statute commences to run." *Loza v. Wells Fargo Bank, N.A.*, No. 20-cv-1354, 2020 WL 13281409, at *8 (C.D. Cal. Apr. 21, 2020) (emphasis added). A "lawsuit is a public record." *Barber v. Halverson*, No. 21-cv-607, 2021 WL 5998573, at *2 (D. Minn. Sept. 15, 2021).

Plaintiffs allege that a December 2015 lawsuit publicly raised the specter of fraud and mismanagement at Reliant. Compl. ¶ 16. Specifically, in December 2015, one of Reliant's owners, Cooper, "filed a cross-complaint against Reliant, Grady and Michaels, *alleging, among other things, fraud and mismanagement* . . . [and] that for years Grady and Michaels engaged in self-dealing and improper dissipation of trust assets." *Id.* (emphasis added).

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

8

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs contend, however, that they "only began to discover the basis of the claims" seven years later in December 2022 thanks to another publicly available lawsuit, *id.* ¶ 18, and filed their original complaint on August 17, 2023. Compl., ECF No. 1-2. But Plaintiffs cannot toll the statute of limitations by burying their heads in the sand as to public records that would alert them of their potential claims and claim that similar, but later-filed public records notified them of their claims. The clock started on Plaintiffs' claims when Reliant, Grady, and Michaels were publicly sued for fraud and mismanagement in 2015 because Plaintiffs had the "opportunity to obtain knowledge from sources open to [their] investigation (such as public records or corporation books)." *Loza*, 2020 WL 13281409, at *8.

Plaintiffs represented in their Purchase Agreement that they were "sophisticated in financial matters," that they "ha[d] access to professional advice," and that they were "capable of evaluating the merits and risks of obtaining an Interest" in Reliant's fractional life insurance investments. Compl. Ex. P at 8. In *Loza*, the Central District held that claims against Bank defendants were time-barred, even where a defendant was a fiduciary (unlike here) and the plaintiffs were unsophisticated non-English speakers (unlike here). 2020 WL 13281409, at *7–9. Like here, the plaintiffs *could have* inquired into records that would have revealed the defendant's wrongdoing. *Id.*; *see also Sagehorn v. Engle*, 141 Cal. App. 4th 452, 461 (2006) ("Since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities.") (cleaned up).

Plaintiffs had an obligation "to obtain knowledge from sources open to [their] investigation," including the public records of a lawsuit. *Loza*, 2020 WL 13281409, at *8. Indeed, since a 2022 court filing is what Plaintiffs say alerted them to Reliant's wrongdoing, they must plead facts showing why the earlier 2015 court filings did not do the same. They do not. "[I]t is clear that the Plaintiff[s] must go find the facts; [they] cannot wait for the facts to find [them]." *Jolly*, 44 Cal. 3d at 1111. Plaintiffs'

9

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

failure to plead such facts forecloses them from relying upon the discovery rule and their claims are time barred.

**B.    The claim for violation of Corporations Code § 25401 (Count IV) is time-barred regardless of any delayed discovery.**

In their Fourth Cause of Action, Plaintiffs allege the Trustee Defendants violated California Corporations Code 25504.1 by aiding and abetting violations of Section 25401, which prohibits "any person to offer or sell a security in this state . . . by means of any written or oral communication that includes an untrue statement of a material fact." Cal. Corp. Code § 25401. This claim is barred by an "absolute" statute of limitations of five years that may not be tolled.[1]

The Corporations Code provides that "no action shall be maintained to enforce any liability created under [Section 25504 or Section 25504.1] unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, *whichever shall first expire*." Cal. Corp. Code § 25506(b) (emphasis added). The five-year period "is a strict limit that may not be tolled." *In re Versign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007); *see also SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982) (interpreting the predecessor to § 25506(b) the same way).

On July 29, 2014, the Reed Plaintiffs invested in Reliant Life Shares. Compl. ¶ 32. Plaintiffs allege they were induced to make that investment by the misrepresentations of the various Defendants in 2014. Thus, the statute of limitations began to run on the date the Reeds invested, and it expired in July of 2019. Plaintiffs' claims premised on California Corporations Code § 25401 are subject to and barred by the absolute limitation in § 25506(b) regardless of whether or not they have plausibly alleged delayed discovery of their claims.

---

[1] Plaintiffs allege Count III against only the "Reliant Defendants, Scott Grady, Sean Michaels and Does 1-20." It is time-barred for the same reasons.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

10

## II. Plaintiffs' claims for negligence (Counts I & II) and breach of fiduciary duty (first Count V) fail because Plaintiffs do not allege the breach of a legally cognizable duty owed by FWTB to Plaintiffs.

To be negligent or breach a fiduciary duty, there must be a duty owed. Plaintiffs fail to allege a legally cognizable duty owed by FWTB. Plaintiffs ignore the duties established by FWTB's contracts, and implausibly try to manufacture other duties that contravene those contracts and the law. Further, Plaintiffs' claims that FWTB misled them (or aided and abetted others in doing so) are factually impossible because FWTB was not involved with Reliant when Plaintiffs invested in 2014. Plaintiffs' negligence-based claims thus must be dismissed.

### A. Negligent Misrepresentation

Plaintiffs call their first cause of action one for negligence, but the allegations seem to assert a claim for negligent misrepresentation. Compl. ¶¶ 105–113. Either way, Plaintiffs fail to state a claim. FWTB first explains why any claims of negligent misrepresentation fail.

For negligent misrepresentation, in addition to establishing a duty owed, Plaintiffs must plausibly allege (a) defendant made a representation about a past or existing material fact that was untrue; (b) regardless of its actual belief, defendant had no reasonable ground for believing the representation to be true; (c) defendant intended to induce plaintiff to rely on the representation; (d) plaintiff was unaware of the falsity of the representation; (e) plaintiff justifiably relied on the truth of the representation; and (f) plaintiff's reliance caused him to sustain damages. *Ragland v. U.S. Bank National Ass'n.*, 209 Cal. App. 4th 182, 196 (2012).

Plaintiffs' claim fails at the starting gate. Plaintiffs make no claims of any affirmative representations by FWTB, let alone misrepresentations, beyond lumping it in with the other Trustee Defendants who, unlike FWTB, actually appear in Reliant's marketing materials. *Swartz*, 476 F.3d at 765 (plaintiffs must differentiate the allegations and "inform each defendant separately of the allegations surrounding

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

11

his alleged participation" in the alleged fraudulent scheme). Plaintiffs fail to plausibly allege that FWTB ever appeared in any of Reliant's closing packages, its website, or its marketing materials. Plaintiffs just say it must be so, "[l]ike prior trustees." Compl. ¶ 47.[2] The lack of specific allegations about FWTB's inclusion in Reliant's marketing materials requires dismissal. *Puri v. Khalsa*, 674 Fed. Appx. 679, 689 (9th Cir. 2017) (uniformly conclusory allegations of negligent misrepresentation failed to satisfy Rule 9(b)).

Nor do Plaintiffs allege—because they cannot—that FWTB intended to induce them to rely on any representations or that they did so justifiably to their detriment. That would be impossible. The Reeds invested in Reliant Life Shares on July 29, 2014. Compl. ¶ 32. It wasn't until nearly a year later—on June 16, 2015—that FTWB first became involved with Reliant at all. Compl. ¶ 52, Ex. H, Ex. K (alleging and stating that FWTB became a trustee and escrow agent in June 2015). It would have been impossible for Plaintiffs to be induced by a misrepresentation in 2014 that could not have happened until 2015. The Complaint thus fails to allege that FWTB could have induced Plaintiffs to buy Reliant Life Shares in 2014.

## B.    Negligence and Gross Negligence

As for negligent misrepresentation, responsibility for negligence or gross negligence rests upon the existence of a legal duty owed by a defendant to a plaintiff, breach of that duty, causation, and damages. *Paz v. State of California*, 994 P.2d 975, 980 (2000). Plaintiffs' claims for negligence and gross negligence also must be dismissed because the Complaint fails to include factual allegations establishing that FWTB owed a legal duty to Plaintiffs that it breached, let alone that Plaintiffs satisfy the other elements of negligence. Compl. ¶¶ 105–121.

As an initial matter, Plaintiffs' claims fail because the Trust Agreement disclaims liability for negligence. Compl. Ex. H at 10. Although the Trust Agreement

---

[2] During the conferral process, Plaintiffs were unable to identify any Reliant marketing materials that mention.

MEMORANDUM OF POINTS AND AUTHORITIES

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

permits liability for "gross negligence, bad faith, or willful misconduct" and Plaintiffs attempt to assert a gross negligence claim, they do not support it with any plausible allegations. In addition to the elements of a regular negligence claim, to state a claim for "gross negligence" Plaintiff must allege extreme misconduct on the part of the defendant. *Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1082 (2011). That misconduct must demonstrate "either a want of even scant care" or "an extreme departure from the ordinary standard of conduct." *Santa Barbara v. Sup. Ct.*, 161 P.3d 1095, 1099 (2007). Even if Plaintiffs weren't contractually barred from asserting a negligence claim and successfully established those threshold elements (they cannot), Plaintiffs do not plausibly allege any facts suggesting wanton or extreme misconduct on the part of FWTB to support a gross negligence claim.

Further, for both their negligence and gross negligence claims, Plaintiffs rely on their impossible factual assertion that FWTB made misrepresentations to induce them to invest in Reliant Life Shares. *Id.* ¶¶ 107–110, 115–17. For both claims, Plaintiffs contend that the "Trustee Defendants" generally authorized statements by Reliant that "caused investors to reasonably believe that the 'trust structure' utilized by the Reliant Defendants would 'ensure safekeeping of the assets placed in trust' and the Reliant Defendants authorized the Trustee Defendants to 'act as custodian and trustee with sole signatory authority on the trusts' bank accounts." Compl. ¶¶ 107, 115. As explained above, it is implausible to suggest that FWTB made any representations that induced Plaintiffs to invest in Reliant Life Shares in 2014 when Plaintiffs also admit FWTB was not involved at all until nearly a year after they made their investment.

Plaintiffs also fail to allege that FWTB breached any contractual duty owed by FWTB to Plaintiffs. They make no specific allegation that FWTB co-mingled funds or disbursed investor money for any purpose not authorized by the Trust Agreement or Escrow Agreement. *Id.* ¶¶ 108–09, 116. A conclusory allegation on information and belief against that all Trustee Defendants made distributions to Grady and

13

Michaels, without reference to FWTB or the relevant contractual provisions, is insufficient to state a claim against FWTB. Allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences" should be rejected. *In re Gilead Sciences*, 536 F.3d at 1055.

LISA's Code of Ethics is the only source of any purported duty Plaintiffs identify to support both of their negligence claims. *Id.* ¶¶ 109, 116. But FWTB was not and is not a member of LISA to be bound by its Code of Ethics.[3] And the only support Plaintiffs muster for their contrary allegation is their claim that they are "informed and believe" that FWTB is a member. *Id.* ¶¶ 66–67 (noting that LISA's website lists the Bank of Utah and the Wilmington Trust as LISA's Strategic Partners and that Plaintiffs "are informed and believe that . . . First Western Bank [is] also [a] member[] of LISA). The very website Plaintiffs reference, however, clearly shows FWTB is not a partner or member of LISA. *Id.* (citing LISA's "current website" as the source for this allegation, which does not include FWTB in its membership directory); *see also* Ex. O (LISA website and code of ethics). Like Plaintiffs cannot turn a blind eye to public records to toll the limitations period, Plaintiffs cannot cherry-pick parts of a website to support their claim against some defendants at the exclusion of facts that clearly undermine their claims against FWTB. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (explaining that courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice for motions to dismiss).

In short, Plaintiffs fail to lodge plausible allegations that create a duty FWTB owed to Plaintiffs or to tie FWTB to any of the other Defendants' misconduct beyond

---

[3] *See* LISA, *Online Directory*, https://www.lisa.org/AF_MemberDirectory_custom.asp. During the conferral process, as with the unsupported allegations that FWTB was included in Reliant's marketing materials, Plaintiffs' counsel could not provide a basis for their allegation that FWTB is a member of LISA.

lumping it in with other "Trustee Defendants." The negligence claims thus fail and should be dismissed with prejudice.

### C.    Breach of Fiduciary Duty

In Plaintiffs' fifth cause of action, they contend that FWTB, as a Trustee Defendant, breached fiduciary duties owed to Plaintiffs. Compl. ¶¶ 152–160.[4] To "plead a cause of action for breach of fiduciary duty, a plaintiff must show the existence of a fiduciary relationship, its breach, and damage caused by the breach." *Apollo Cap. Fund, LLC v. Roth Cap. Partners*, LLC, 158 Cal. App. 4th 226, 244 (2007). Here, Plaintiffs do not make it past the first prong.

Plaintiffs' claim is premised on the same conduct as Plaintiffs' negligence claims, not the controlling contracts. Again, Plaintiffs base this claim on Reliant's "statements in the Offering Circular, the website and marketing Brochures [which] encouraged Plaintiffs and Class members to repose trust and confidence in Reliant." Compl. ¶ 152. And again, they allege that the Trustee Defendants "voluntarily undertook duties to the beneficiaries of the Reliant Trusts based on the LISA Code of Ethics." *Id.* ¶ 155. Plaintiffs then claim that the Trustee Defendants "failed their duty of due diligence" because they did not inspect Reliant's website and marketing materials before agreeing to serve as trustee and did not discover that Reliant was not licensed to sell fractionalized life settlements or that Grady was a disbarred lawyer. *Id.* ¶ 156.

In addition to the factual problems with claims of misrepresentations and the fact that FWTB is not a member of LISA, "before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 150 (Cal. 2008). Under Connecticut law, which controls interpretation of the Trust

---

[4] This is Plaintiffs' first of two "Fifth" causes of action. All subsequent causes of action are thus misnumbered.

MEMORANDUM OF POINTS AND AUTHORITIES

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

Agreement, the Connecticut Statutory Trust Act ("Connecticut Act") allows a trust instrument to limit the duties owed by a trustee to a beneficiary. Conn. Gen. Stat. § 34-500 to § 34-547. The Connecticut Act states that:

> A governing instrument[5] may contain any provision relating to . . . the rights, duties and obligations of the trustees, beneficial owners and other persons, which is not contrary to any provision or requirement of sections 34-500 to 34-547 . . . . To the extent that, at law or in equity, a trustee has duties, *including fiduciary duties*, and liabilities relating thereto to a statutory trust or to a beneficial owner[.] . . . The trustee's duties and liabilities may be expanded or restricted by provisions in a governing instrument.

*Id.* § 34-517.

The language in the Trust Agreement thus precludes a fiduciary relationship as a matter of law. Connecticut law controls the agreement and the interpretation of any of its provisions. Compl. Ex. H at 26–27 (Section 7.2). It emphasized that the duties imposed by the Trust Agreement prevailed against any additional or contrary common-law (or other) duties, including fiduciary duties. *Id.* (disclaiming the "establishment of fiduciary or other standards of responsibility or limitations on the acts or powers of trustees that are inconsistent with the limitations or authorities and powers of trustees . . . as set forth or referenced in this agreement"). Therefore, the Trust Agreement limited FWTB's duties to those explicitly stated in the agreement. Any additional duties posited by Plaintiffs were invalidated by the Agreement.

In fact, the Trust Agreement repeatedly and expressly disclaims the very duty Plaintiffs seek to impose upon FWTB: (1) "the Trustee shall in no event assume or

---

[5] A "governing instrument" is defined as a "trust instrument which creates a statutory trust and provides for the governance of the affairs of the statutory trust and the conduct of its business." *Id.* § 34-501. This is what the Trust Agreement between FWTB and Reliant did, making it the applicable governing instrument.

16

MEMORANDUM OF POINTS AND AUTHORITIES

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

incur any personal liability, duty, or obligation to the Grantor, the Beneficiaries or any other Person"; (2) the "Trustee shall not be liable for the default or misconduct of Grantor or the Beneficiaries, any co-trustee, or any other Person under this Agreement or otherwise"; and (3) the "Trustee *shall not be liable to* the Trust, *the Beneficiaries*, or any other person that is party to or is otherwise bound by this Agreement for breach of fiduciary duties for the Trustee's good faith reliance on the provisions of this Agreement." Compl. Ex. H at 11–12 (emphasis added). Plaintiffs ignore this language. It is thus contrary to the Trust Agreement and implausible that FWTB "knowingly" created a fiduciary relationship with Plaintiffs. *Genentech*, 181 P.3d at 150.

FWTB had no duty—contractual, statutory, or otherwise—to micromanage what Reliant did with its money and whether it fulfilled its promise to its investors to use their money solely for policy maintenance and premiums. Plaintiffs' Exhibit H— the Trust Agreement—confirms this. The only way FWTB could be liable under the Trustee Agreement is for "gross negligence, bad faith, or willful misconduct," which Plaintiffs do not plausibly allege. *Id.* at 11–12. Plaintiffs' claim for breach of a fiduciary duty must be dismissed with prejudice because they do not establish the presence of such a duty.

### III. Plaintiffs' financial elder abuse claim (second Count V) must be dismissed because Plaintiffs fail to allege FWTB had actual knowledge of the wrongful conduct.

In Plaintiffs' sixth cause of action, they allege that the Trustee Defendants "assist[ed] and aid[ed] and abett[ed] Defendants Reliant, Michaels and Grady in harming the members of the Elder Abuse Subclass" in "obtain[ing] the elder's property when they knew or should have known that the conduct is likely to be harmful to the elder." Compl. ¶ 163.

This allegation derives from California Welfare & Institutions Code § 15610.30(a)(2), which states that an entity is liable when it "[a]ssists in taking,

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

17

secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." To "assist" in such conduct, a defendant must meet the "aiding and abetting" standard set forth in California. *Bortz v. JPMorgan Chase Bank, N.A.*, No. 21-cv-618, 2022 WL 1489832, at *6 (S.D. Cal. May 10, 2022), *aff'd sub nom.*, No. 22-cv-55582, 2023 WL 4700640 (9th Cir. July 24, 2023). "That standard requires Plaintiffs to plead Defendants' actual knowledge of the third-party's wrongful conduct." *Id.*; *accord Miller v. Bank of Am., N.A.*, No. 1:21-cv-00337, 2022 WL 3704093, at *5 (E.D. Cal. Aug. 26, 2022). Constructive knowledge of the underlying wrongdoing does not suffice. *Bortz*, 2022 WL 1489832, at *6.

Here, as in *Bortz*, Plaintiffs fail to allege that FWTB had actual knowledge of any alleged financial scheme run by the third-party Reliant defendants. The Complaint is replete with unsubstantiated allegations that FWTB "knew *or should have known*" that the Reliant Defendants were engaging in wrongdoing because the Trustee Defendants were "professional trustees with experience in administering life settlement trusts." *See, e.g.*, Compl. ¶¶ 116, 146, 149. The allegations of FWTB's actual knowledge are non-existent, so Plaintiffs are left with their allegation that FWTB *should have known* about the fraud scheme where Michaels and Grady looted Reliant—nothing more than "textbook allegations of constructive knowledge." *Bortz*, 2022 WL 1489832, at *6. Generally stating that FWTB (or any other Trustee Defendant) "knew" of the alleged wrongdoing is completely conclusory absent specific facts indicating direct knowledge.

Because the Complaint fails to allege FWTB's actual knowledge of any wrongdoing under § 15610.30(a)(2), Plaintiffs' elder abuse claim must be dismissed against FWTB.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

18

MEMORANDUM OF POINTS AND AUTHORITIES

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

**IV.  Plaintiffs' claim for unfair business practices must be dismissed because Plaintiffs failed to plead the claim with the required particularity or allege FWTB's personal participation in any unfair business practices.**

Plaintiffs' seventh cause of action alleges that "all defendants" (including FWTB) engaged in unfair business practices, in violation of the California Business & Professions Code § 17200 et seq. One may not engage in "unfair competition," which "include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited" by other named sections of the Business and Professions Code. *Id.* § 17200.

Plaintiffs do not identify how FWTB in particular engaged in unfair business practices; rather, they state generally that unspecified defendants "aid[ed] and abett[ed] the sale of Reliant investments," "fail[ed] to disclose that the investments were unregistered securities," "ma[de] negligent misrepresentations regarding Reliant to the public [which] was wrongful," "failed to adequately train and supervise agents, to prevent them from encouraging from purchasing unregistered securities in the guise of purchasing life settlements," and "substantially assisted" Reliant in "engaging in unfair, unlawful, and deceptive business practices." Compl. ¶¶ 171–74.

Plaintiffs' claim fails for two reasons. First, it insufficiently alleges FWTB's "personal participation" in any unfair business practice. "[A] claim under § 17200 . . . cannot be predicated on vicarious liability . . . . A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate" the statute. *Kennealy v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174, 1192 (S.D. Cal. 2010) (internal quotation marks omitted). While "liability may be imposed on one who aids and abets the commission of an intentional tort," this is only true if the defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Id.*

at 1192–93 (cleaned up).[6] "Substantial assistance" "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 583 (2021). Liability cannot be "based on [the defendant]'s omission rather than commission." *Kenneally*, 711 F. Supp. 2d at 1193.

> When [a] "defendant play[s] no part in preparing or sending any 'statement' that might be construed as untrue or misleading under the unfair business practices statutes . . . there can be no civil liability for unfair practices. Moreover, the law is clear that . . . [t]here is no duty to investigate the truth of statements made by others."

*Id.* (alteration in original); *Kemp v. Wells Fargo Bank, N.A.*, No. 17-cv-01259-MEJ, 2017 WL 4805567, at *16 (N.D. Cal. Oct. 25, 2017) (where the plaintiff "allege[d] an unspecified Defendant engaged in an unfair business practice by failing to uphold its duty to provide accurate information to Plaintiff regarding loss mitigation options," allegations were "conclusory and unsupported by facts" and were insufficient to show unfair business practices).

Plaintiffs' make no allegation of FWTB's personal participation in any unfair business practice. Their allegation that unspecified defendants "aid[ed] and abett[ed] the sale of Reliant investments," Compl. ¶ 171, provides only a conclusory allegation; it does not detail whether and how FWTB "reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting [Reliant] in performing a wrongful act." *Chen*, 61 Cal. App. 5th at 583. The allegation that unspecified defendants "fail[ed] to disclose that the investments were unregistered securities," Compl. ¶ 171, amounts to an "omission rather than a commission" that cannot support liability for FWTB. *Kenneally*, 711 F. Supp. 2d at 1193. The allegation that unnamed defendants "ma[de] negligent misrepresentations regarding Reliant to the public

---

[6] Plaintiff's allegations are so vague that it is unclear precisely which conduct (intentional or otherwise) is implicated in this cause of action.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

MEMORANDUM OF POINTS AND AUTHORITIES

[which] was wrongful," Compl. ¶ 172, is conclusory, given that Plaintiffs never alleged that FWTB made *any* representations to the public about Reliant. Moreover, FWTB had "no duty to investigate the truth of statements made by" Reliant. *Id.* Finally, the allegation that unnamed defendants "failed to adequately train and supervise agents, to prevent them from encouraging" the sale of unregistered securities fails, Compl. ¶ 173, because Plaintiffs never allege that FWTB or its agents played any role in selling Reliant's life insurance settlements. Plaintiffs' claim against FWTB is simply an improper vicarious liability claim.

Second, Plaintiffs fail to allege this count with the requisite particularity as required by Fed. R. Civ. P. 9(b). The Ninth Circuit "ha[s] specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of" California's unfair competition laws. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–27 (9th Cir. 2009). This is especially true when "the claim is said to be 'grounded in fraud,'" meaning that "the claim as a *whole* must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1127.

Here, Plaintiffs' Complaint must—but doesn't—allege with particularity how FWTB engaged in unfair business practices. It fails to specify the "who, what, where, when, and how" specifically related to FWTB. Instead, it leans on allegations of Reliant's "fraudulent course of conduct" of misrepresenting the life insurance investments to induce people to purchase them. Compl. ¶¶ 171–174. As explained above, not only is that impossible vis-à-vis FWTB, such general allegations impermissibly "lump multiple defendants together" and fail to "differentiate the allegations and 'inform [FWTB] separately of the allegations surrounding [its] alleged participation'" in Reliant's alleged fraudulent scheme. *Swartz*, 476 F.3d at 765. Such a claim cannot stand under Rule 9(b) and must be dismissed.

## **CONCLUSION**

Plaintiffs fail to state a claim and amendment of the Complaint with respect to FWTB would be futile because, as explained above, the claims are not just

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

21

MEMORANDUM OF POINTS AND AUTHORITIES

1    implausible, but impossible to support legally or factually. FWTB thus respectfully

2    requests that the Court dismiss all claims against it with prejudice.

3

4    Dated: January 5, 2024                Respectfully submitted,

5                                          **BRYAN CAVE LEIGHTON PAISNER LLP**

6

7                                          By: _____
                                                 */s/ David A. Harford*

8                                               David A. Harford
                                                Adam B. Stern
                                                Benjamin J. Hogan

9

10                                         *Attorney for First Western Trust Bank*

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

22
MEMORANDUM OF POINTS AND AUTHORITIES

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for First Western Bank, certifies that this brief contains 6997 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted January 5, 2024,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ David A. Harford*

David A. Harford
Adam B. Stern
Benjamin J. Hogan

*Attorney for First Western Trust Bank*

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614

MEMORANDUM OF POINTS AND AUTHORITIES